## UNITED STATES *v.* NORMILE.

## NORMILE *v.* UNITED STATES.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 83, 84. Argued December 3, 1915.—Decided December 13, 1915.

A contract to produce a result does not bring the means employed to provide it into the contract. *United States* v. *O'Brien*, 220 U. S. 321.

In this case, a contractor was not allowed the expense of erecting temporary dams because the Government engineer suggested that it be placed in a certain location that proved impracticable, necessitating relocation and rebuilding, as the contract only called for the location of the permanent structure by the engineer.

An extension of time requested by claimant, without any suggestion that it was made necessary by fault of the Government or by the violence of the elements, *held*, in view of the warning given on granting the extension, not to absolve claimant from the extra expenses specified in the contract in case such extension were allowed.

A Government contractor in this case *held* not to be entitled to extra compensation by reason of advanced prices in labor and material due to outbreak of war, it appearing that the increased expense was not due to any breach on the part of the United States.
49 Ct. Cl. 73, reversed.

THE facts, which involve the construction of, and the amounts due on, contracts for public works with the United States, are stated in the opinion.

*Mr. Frank Carter Pope* and *Mr. Benjamin Carter* for Normile:

A liability is imposed on the United States by contracts for public improvement.

There is inseparability of the government's plan from action of engineer thereunder.

The administrative expense was wrongfully imposed on the contractors; and there was a liability of United States for the increased cost of work caused by the delay.

The United States, not the claimants, is estopped.

In support of the claimants' contentions, see *District of Columbia* v. *Gallaher,* 124 U. S. 505; *Insurance Co.* v. *Dutcher,* 95 U. S. 269; *Old Colony Trust Co.* v. *Omaha,* 200 U. S. 100; *Simpson* v. *United States,* 172 U. S. 372; *Topliff* v. *Topliff,* 122 U. S. 121; *Christie* v. *United States,* 237 U. S. 234; *United States* v. *Gibbons,* 109 U. S. 200; *Maryland Steel Co.* v. *United States,* 235 U. S. 451; *United States* v. *United Engineering Co.,* 234 U. S. 236; *Hinckley* v. *Pittsburgh Steel Co.,* 121 U. S. 264; *Phila., Wil. & Balt. R. R.* v. *Howard,* 13 How. 307; *Moore, Receiver,* v. *United States,* 46 Ct. Cls. 139; *Spearin* v. *United States,* Ct. Cls. (not reported); *Kelly* v. *United States,* 31 Ct. Cls. 361; *Fitzgerald* v. *First National Bank,* 114 Fed. Rep. 474; *Wyandotte* v. *King Bridge Co.,* 100 Fed. Rep. 196.

*Mr. Assistant Attorney General Huston Thompson,* with whom *Mr. Philip M. Ashford* was on the brief, for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a claim for extra expenses incurred in performing a contract to build a dam and certain accessories on the Yamhill River, Oregon. The contract was made on March 11, 1898, and required the claimants to begin work as prescribed by paragraph 41 of the specifications, to complete the keeper's dwelling, &c. within sixty days from notification, and the whole work before December 31, 1898. Paragraph 41 of the specifications stated that the sites for the construction had not yet been purchased and that no work would be begun until they were secured. It then provided that within ten days after notification that the sites had been secured and the contract had been approved, the contractor 'must proceed with the work in a vigorous manner; he must complete the keeper's dwelling, woodshed, walks, fences, etc., within sixty days from date of notification, and the whole contract on or before December 31, 1898.' It added that because of the spring rise of the Willamette, &c., it was probable that work on the lock and dam could not be begun before June at the earliest; and that the date of completion had been set because it was desired that all work should be finished during one low water season—the meaning of which was known by the claimants. Authority to purchase was asked by telegraph on March 10 and granted on March 15. The abstract of title and deeds were sent to the Chief of Engineers on April 9 and 14, and the contractors, who had given notice of their readiness to begin, were told on April 9 that the deeds had been sent on. On April 29 a telegram was received showing encumbrances to be removed before the deeds were accepted. On May 13 the attorney for the United States approved the title. On May 12 the contractors began work on the keeper's dwelling, &c. and on June 14 were given the notification to proceed.

Before June 14, 1898, considerable work had been done, material had been assembled and labor employed. The war with Spain began on April 21, 1898, raising the price of labor and materials. The increased cost is found, but it is found also that this increase was not shown to be due to any breach of contract by the United States and that the claimants did not have room and facilities for storing large consignments of materials. The claimants, however, insist upon this item being allowed, and make it the ground of their cross appeal.

In 1899 after a lock wall had been built at right angles with the line of the wing dam and parallel to the line of the stream it became necessary to divert the water from the line of the wing dam in order that the latter might be built. This had to be done by sending the water through the lock chamber and to that end it was necessary to build a temporary dam. The claimants had no civil engineer, although they commanded some experience. They asked the local engineer in charge for the United States where the temporary dam should be placed. He indicated a site near the head of the lock, where the river was narrow, as the only suitable place, and the claimants started upon the dam in June. The up stream end of the lock chamber was closed with a lift-wall, and to turn the water through the chamber it had to be raised sixteen feet. The bottom of the river was inclined to disintegrate and when the water was raised to twelve feet the dam broke. Two more attempts were made with the same result. Early in 1900 the claimants applied to the local engineer for leave to change the place and to cut a hole through the lift-wall, which was granted and the dam was built. The bottom of the river at the new site was similar to that at the old and it would not have been possible to construct the dam there without the relief afforded by the hole. The Court of Claims allowed the cost of the last two temporary dams and the United States appeals.

The specifications provided that if the time for performance should be extended all expenses for inspection and superintendence should be deducted. The claimants requested an extension of time, not suggesting violence of the elements, contemplated in the contract as a ground, or fault of the United States. The extension was granted with a warning that it would not absolve them from the above expenses. The Court of Claims allowed the claimants the expenses accrued during the time of building the second and third temporary dams, from which allowance also the United States appeals.

Taking up first the allowance for the unsuccessful temporary dams and charges for superintendence during the time consumed in constructing them we are of opinion that the United States is entitled to prevail in its appeal. The contract was silent as to them, and did not embrace them. A contract to produce a result does not bring the means employed to provide it into the contract. *Bacon* v. *Parker*, 137 Massachusetts, 309, 311. *United States* v. *O'Brien*, 220 U. S. 321, 327. They remain under the control of the contractors alone. The claimants rely upon specification 40: "The lines and levels for this work will be established on the ground by the engineers, and the contractor must conform and keep thereto." But this refers to the work, the permanent structure, not to the transitory instrumentality used in building it. While the engineer in answer to the claimants pointed out a place for the temporary dam, it does not appear to have been ordered to be placed there. Moreover the site seems to have been as good as any other, the final success having been achieved by cutting a hole in the lift-wall of the lock chamber, not by the change of the place. There is nothing to show that the claimants could not have left this opening, or have obtained leave to make it earlier. Leave was granted as soon as asked. The mode of constructing the temporary dam was wholly the claimants' affair.

Upon the cross appeal also we are of opinion that the Government is in the right. If it had attempted to hold the claimants to the time originally mentioned in the contract the question might be different, but we see no ground for a claim on their part to hold the United States liable for delay. Specification 41, the substance of which has been stated, is inconsistent with the implication of an undertaking that the claimants shall be notified to begin within any particular time. The findings hardly warrant the statement in the opinion that the delay from May 13 to June 14 was chargeable to the defendant's neglect. It simply is left unexplained. The notice was given in time to begin work on the lock and dam as early as was contemplated by specification 41. But further, as is pointed out by the court below, the prices had advanced before the supposed neglect began—not to speak of the finding that the claimants had not the facilities to accumulate material even if they had been notified at an earlier date.

*Judgment reversed. Petition dismissed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of these cases.