WHEELER LUMBER BRIDGE AND SUPPLY COM-
PANY OF DES MOINES, IOWA, *v.* UNITED
STATES.

No. 15. Argued April 25, 1929.—Decided May 26, 1930.

*Mr. Jesse I. Miller* for the Wheeler Lumber Bridge & Supply Company.

*Attorney General Mitchell, Assistant Attorney General Galloway, Messrs. Alfred A. Wheat* and *Gardner P. Lloyd,* Special Assistants to the Attorney General, and *Joseph H. Sheppard* were on the brief for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

The Court of Claims has certified to us a question concerning which it desires instruction for the proper disposition of the above entitled cause now pending before it. Late in the last term we dismissed the certificate in the belief that the question propounded embraces the whole case, and so could not be answered consistently with the applicable statute or with the constitutional limitations on our jurisdiction. But before the term closed we vacated the order of dismissal and held the matter for further consideration.

The facts shown in the certificate are as follows: In the years 1918, 1919, 1920 and 1921, the plaintiff, a corporate dealer in bridge materials, engaged to sell and

deliver to each of several counties in the States of Iowa and Nebraska a quantity of lumber, which in each instance was needed and used by the purchasing county in the construction or repair of bridges along public highways within the county. The plaintiff was to ship the lumber from places outside the State to designated points within the purchasing county and there deliver the same to the county f. o. b. at stated prices. The plaintiff fulfilled its engagement as made. The shipping was done by railroad under bills of lading calling for delivery by the carrier to the plaintiff, or on its order, at destination. The plaintiff forwarded the bills of lading to the county clerk; and when the shipments reached their destination the county clerk, acting for the county and conforming to the plaintiff's intention, presented the bills of lading to the carrier, paid the transportation charges, accepted the lumber, deducted the transportation charges from the stipulated f. o. b. price and remitted the balance to the plaintiff.

The federal revenue laws in force at the time imposed on the transportation of freight by rail or water a tax of three per cent of the amount paid for that service; required that the tax be paid "by the person paying for the service"; and authorized the carrier to collect the tax on behalf of the government; but declared that transportation service rendered to a State should be exempt from the tax. Revenue Act 1917, c. 63, §§ 500, 501, 502, 503, 40 Stat. 300, 314, 315; Revenue Act 1918, c. 18, §§ 500 (a) and (h), 501 (a), 502, 40 Stat. 1057, 1101, 1102, 1103. In the administrative regulations issued under those laws the exemption of transportation service to a State was construed as including such service to her "political subdivisions, such as counties, cities, towns, and other municipalities."

No tax on the transportation service was demanded or paid when the transportation charges were paid. But

thereafter the Collector of Internal Revenue assessed such a tax against the plaintiff and the plaintiff paid it under protest. Application was then made by the plaintiff to have the amount refunded; but the application was denied by the Commissioner of Internal Revenue.

The suit in the Court of Claims was brought by the plaintiff against the United States to recover the amount collected on the tax—that exaction being assailed on two grounds: One that the transportation service was rendered to the purchasing counties, and therefore was exempt from the tax, and the other that, as the counties paid the carrier its transportation charges, the liability, if any, for the tax did not attach to the plaintiff.

The certificate further shows that the court referred the case to a commissioner who, in accord with the reference, reported special findings of fact; and that both parties conceded the correctness and accuracy of the report. In making the certificate the court accepted and summarized the facts reported by its commissioner.

The question certified, somewhat shortened in words but not altered in substance, is—

Where a vendor, who has engaged to sell and deliver lumber needed for public bridges to a county at a designated point in the county f. o. b. at a stated price, ships the lumber by rail to that point preparatory to there effecting the required delivery and forwards the bills of lading to the county, and the latter, conformably to the vendor's intention, surrenders the bills of lading to the carrier, pays its transportation charges, receives the lumber from it, deducts from the f. o. b. price at destination the transportation charges paid to the carrier, and remits the balance to the vendor—is the transportation of the lumber to the place of delivery a service rendered to the county [State] within the meaning of the exempting provisions of § 502 of the Revenue Act of 1917 and § 500(h) of the Revenue Act of 1918, and within the principle

recognized and applied in *Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218?

The statute providing for certification of questions by the Court of Claims is § 3 (a) of the act of February 13, 1925, c. 229, 43 Stat. 936, 939, which reads:

" That in any case in the Court of Claims, including those begun under section 180 of the Judicial Code, that court at any time may certify to the Supreme Court any definite and distinct questions of law concerning which instructions are desired for the proper disposition of the cause; and thereupon the Supreme Court may give appropriate instructions on the questions certified and transmit the same to the Court of Claims for its guidance in the further progress of the cause."

This is a new provision. Similar provisions have permitted particular federal courts to certify questions to this Court, but this provision is the first giving such authority to the Court of Claims.

There are two reasons why a certification by that court which embraces the whole case cannot be entertained by this Court. One is that to accept such a certification and proceed to a determination thereon, in advance of a decision by that court, would be an exercise of original jurisdiction by this Court contrary to the constitutional provision which prescribes that its jurisdiction shall be appellate in all cases other than those affecting ambassadors, other public ministers and consuls, and those in which a State shall be a party. Art. III, § 2, cl. 2. The other is that the statute permits a certification only of " definite and distinct questions of law."

Even the restricted certification permitted by the statute invokes action which is rather exceptional in the appellate field. But that such action is appellate is now settled. Early and long continued usage amounting to a practical construction of the constitutional provision requires that it be so regarded.

In § 6 of the act of April 29, 1802, c. 31, 2 Stat. 156, Congress made provision for restricted certifications from the circuit courts to this Court in advance of a decision by the former. That provision remained in force and was given effect for seventy years. Many certifications in both civil and criminal cases were entertained and dealt with under it. Indeed, it was the only mode in which questions of law in cases of several classes could be brought to this Court during that period.

But in exercising that jurisdiction this Court uniformly ruled that it could not entertain the certifications unless they were of distinct questions of law and not of the whole case, for otherwise it would be assuming original jurisdiction withheld from it by the Constitution. *White* v. *Turk*, 12 Pet. 238, 239; *United States* v. *Stone*, 14 Pet. 524, 525; *Nesmith* v. *Sheldon*, 6 How. 41, 43; *Webster* v. *Cooper*, 10 How. 54, 55; *The Alicia*, 7 Wall. 571, 573; *United States* v. *Perrin*, 131 U. S. 55, 58; *Baltimore and Ohio R. R. Co.* v. *Interstate Commerce Commission*, 215 U. S. 216, 224.

And, in applying the provision of 1802 and other later provisions permitting certifications, this Court, while holding, on the one hand, that it cannot be required through certifications thereunder to pass upon questions of fact, or mixed questions of law and fact; or to accept a transfer of the whole case; or to answer questions of objectionable generality—which instead of presenting distinct propositions of law cover unstated matters lurking in the record—or questions that are hypothetical and speculative, has distinctly held, on the other hand, that the certification of a definite question of law is not rendered objectionable merely because the answer may be decisive of the case, and also that the importance or controlling character of the question certified, if it be a question of law and suitably specific, affords no ground for declining

to accept the certification. *United States* v. *Mayer*, 235 U. S. 55, 66, and cases cited.

The practice and rulings just described are equally applicable to certifications under the provision relating to the Court of Claims.

Upon further consideration of the present certificate in the light of that practice and those rulings we are of opinion that the certificate is not open to any valid objection and should be entertained. The question certified is a distinct and definite question of law and its materiality is adequately shown. Neither in form nor in effect does it embrace the whole case. It does not include any question of fact, but, on the contrary, treats the facts as fully ascertained and definitely states those out of which it arises. No doubt, with these facts ascertained, an affirmative answer to the question would be decisive of the case. But if the answer were in the negative the case would be left where another question of law raised by the plaintiff's petition and mooted in the Court of Claims, but not certified, would need to be resolved by that court before a judgment could be given.

We thus are brought to the solution of the certified question. Counsel for the government concede, and rightly so, that the exemption accorded to a State by § 502 of the Revenue Act of 1917 and § 500(h) of the Revenue Act of 1918 should be construed as extending to her counties, as is done in the administrative regulations. The Court of Claims, evidently entertaining this view of the exemption, inquires whether the transportation described in the question is a service rendered to the county within the meaning of those sections. The transportation is had at the vendor's instance and is his means of getting his lumber to the place of sale and delivery. He engages to deliver f. o. b., not at the place of shipment, but at the place of destination, which is

the place of sale and delivery. There is no delivery, and therefore no sale, until after the transportation is completed. Upon these facts, recited in the question, we are of opinion that the transportation is not a service rendered to the county in the sense of the sections cited, but is a service rendered to the vendor. Conceding that the sections are parts of a taxing scheme, and assuming that they are intended to recognize and fully respect the constitutional immunity of a state agency, such as a county, from federal taxation, we think they neither require such transportation to be regarded as a service to the county nor operate to exempt such transportation from the tax.

The tax is not laid on the sale nor because of the sale. It is laid on the transportation and is measured by the transportation charges. True, it appears that here the transportation was had with a view to a definite sale; but the fact remains that the transportation was not part of the sale but preliminary to it and wholly the vendor's affair. *United States* v. *Normile,* 239 U. S. 344, 348. It follows that the tax on the transportation cannot be regarded as a tax or burden on the sale. *Cornell* v. *Coyne,* 192 U. S. 418.

As the tax is not laid on the sale or in any wise measured by it the case of *Panhandle Oil Co.* v. *Mississippi,* 277 U. S. 218, referred to in the question and relied on by the plaintiff, is not in point.

*Question Answered "No."*