STANDARD OIL CO. OF CALIFORNIA v. McLAUGHLIN, Collector of Internal Revenue.

No. 18015.

District Court, N. D. California, S. D.

Jan. 16, 1932.

Pillsbury, Madison & Sutro, of San Francisco, Cal., for plaintiff.

George J. Hatfield, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

KERRIGAN, District Judge.

Plaintiff seeks to recover taxes in the sum of $1,619,143.11, together with interest from September 3, 1924, at 6 per cent. per annum. The tax covers the transportation of oil by pipe line from April 1, 1919, to December 31, 1921. It was levied under the provisions of sections 500 and 501 of the Revenue Act of 1918 (40 Stat. 1101–1103), the pertinent portions of which are as follows:

"Sec. 500. That from and after April 1, 1919, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1917—* * *

"(e) A tax equivalent to 8 per centum of the amount paid for the transportation on or after such date of oil by pipe line."

These sections were in effect from April 1, 1919, to December 31, 1921, being repealed by the Revenue Act of 1921, effective January 1, 1922. The repeal, however, was subject to the saving clause contained in section 1400, subdivision (b), of the Revenue Act of 1921 (42 Stat. 320, 321): "(b) The parts of the Revenue Act of 1918 which are repealed by this Act shall (unless otherwise specifically provided in this Act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts ceased to be in effect, and for the imposition and collection of all penalties or forfeitures which have accrued or may accrue in relation to any such taxes. In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act. The unexpended balance of any appropriation heretofore made and now available for the administration of any such part of the Revenue Act of 1918 shall be available for the administration of this Act or the corresponding provision thereof."

Plaintiff contends, first, that the taxes did not accrue under the Revenue Act of 1918 and were, therefore, not saved by section 1400 (b); second, that the law under which the tax was assessed was unconstitutional; third, that if the tax was in fact legal and constitutional it is excessive in amount.

The plaintiff is an oil corporation which, during the period in question, was engaged in the business of producing, purchasing, refining, and marketing crude oil and its products. It maintained private pipe lines which were used exclusively for transporting its own products. At no time was there any charge made for the transportation of these products; nor were there any bona fide actual rates or tariffs in existence from which the tax could be computed nor any basis of rates or tariffs of other pipe lines for like service. It is conceded that the tax due from plaintiff had, therefore, to be computed on the basis of a reasonable charge for transportation. May 7, 1919, in accordance with Treasury Decision No. 2834, Regulation 49, plaintiff reported these facts to the Commissioner of Internal Revenue and requested him to fix the reasonable charge for transportation. This determination was delayed, and the time within which plaintiff should file its return was extended from time to time until on September 28, 1920, the Commissioner of Internal Revenue certified an assessment of taxes in the sum of $467,853.74, covering taxes due from April 1, 1919, to May 31, 1920. Demand for payment was made by the collector in April, 1921, and on April 14, 1921, plaintiff made a claim for abatement. Another assessment was certified February 14, 1922, covering taxes due from April 1, 1919, to September 30, 1921, in the sum of $2,333,042.17, as to which assessment a claim for abatement was filed March 10, 1922. Finally, a

third assessment in the sum of $598,967.23, covering additional tax due for the period from April 1, 1919, to September 30, 1921, and also tax due from October 1, 1921, to December 31, 1921, was certified December 27, 1922; demand for payment being made by the collector January 16, 1923, and a claim for abatement being filed January 23, 1923. No determination was had as to any of the claims for abatement until July 24, 1924, when the sum of $853,710.22 was allowed by way of abatement on the second assessment, the claims as to the first and third assessments being allowed in full, the notice stating, "As your entire liability for the period covered by this assessment has been paid and credited against another assessment, the claim is allowed in full."

At the time when the formal notice of adjustment of the claim for abatement was given, the taxes abated had in fact been paid, upon a recomputation of which plaintiff received informal notice February 16, 1923, and formal notice June 27, 1923. Formal demand for payment of the recomputed tax was made March 19, 1924; the tax was paid under protest March 29, 1924, and negotiations for compromise of demands for penalty and interest at 1 per cent. per month were entered into. The penalty was compromised, but the interest was not, and plaintiff finally paid under protest the interest at 1 per cent. per month from the time of formal notice of the recomputation (June 27, 1923) to the time when the tax was paid. A claim for refund having been duly made, this action was commenced to recover the taxes and interest paid.

The procedural steps have been stated thus in detail because of their bearing upon the various contentions of plaintiff. It is conceded that the tax finally computed was based upon a correct determination of a reasonable charge for the transportation of oil actually transported, but it is contended that the fact that this determination, in 1923, was made over a year after the repeal of the Revenue Act of 1918, is a major factor to be considered in deciding whether the tax was constitutional in its application to plaintiff and whether the tax "accrued" prior to the repeal of the Revenue Act of 1918.

■ In considering whether this tax had "accrued" prior to the repeal of the applicable portion of the Revenue Act of 1918, within the meaning of the saving clause of the Revenue Act of 1921, the first inquiry is as to the incidence of the tax. The taxing act itself and the decisions construing it

[Motter v. Derby Oil Co. (C. C. A.) 16 F.(2d) 717; Dixie Oil Co. v. U. S. (C. C. A.) 24 F.(2d) 804] make it plain that what is taxed is the privilege of using certain property in a certain way, i. e., the privilege of using pipe-line facilities for the transportation of oil. The statute levies the tax and fixes the rate at 8 per cent. of the amount paid for the transportation of oil by pipe line. Recognizing, however, that much oil was carried through pipe lines by private carriers and not for hire, and expressly desiring that such transportation should be taxed, Congress provided, in section 501 (d), a method by which the tax to be paid at the designated rate should be determined and fixed in amount. The incidence of the tax is, however, not thereby shifted from the privilege of transportation being taxed, and in the present case it is conceded that all of the transportation taxed occurred prior to the repeal of section 500 and 501 of the Revenue Act of 1918, and that the charge for such transportation finally determined by the commissioner as the basis for computing the tax is a reasonable charge.

■ However, the plaintiff takes the position that a determination of the reasonable charge for transportation is a condition precedent to the coming due of the tax, and that, as no *correct* determination was made prior to the repeal, payment of the tax was not due at the time of the repeal, hence that the tax had not "accrued" at the time of the repeal. See U. S. v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131. This position is not tenable for two reasons. In the first place, looking at the sections of the Revenue Act of 1918 with which we are concerned, it is apparent that, as has been said previously, the essential factor in the creation of a liability to pay the 8 per cent. tax there imposed is the fact of transportation of oil by pipe line. After transportation had occurred, the only factor remaining to be ascertained was the "amount paid" for it; in the case of plaintiff, this "amount paid" was to be fixed on the basis of a reasonable charge as determined by the commissioner.

With this situation in mind, the meaning of the phrase "all taxes which have accrued," in the saving clause of the Revenue Act of 1921, as applied to the tax with which we are here concerned, may be determined. In connection with estate taxes, this phrase has already been construed, as it appears in the same form in both the Revenue Acts of 1918

and 1921, and has been held to mean all taxes which "have arisen under" the prior acts. Page v. Skinner (C. C. A.) 298 F. 731; Ewbank v. U. S. (C. C. A.) 50 F.(2d) 409; and see Alker v. U. S. (C. C. A.) 47 F.(2d) 229. In these cases a tax was held to have "accrued" under a prior act when the right to succession arose under the earlier act although payment was not due until after the repeal. I am satisfied that the same construction is applicable here, and that the taxes in question, for the period from April 1, 1919, to December 31, 1921, "accrued" before the repeal of the Revenue Act of 1918, even though the tax were considered to be uncollectible prior to the repeal because of a failure of determination of the basis for computation.

This brings me to a consideration of the second ground for holding these taxes to have accrued prior to the repeal of the act of 1918. The commissioner had in fact made a determination of a basis for computing the tax prior to the repeal of the statute, and had based an assessment thereon. He had exercised his jurisdiction in this regard. It is true that it is now conceded that his conclusions were erroneous, but this does not make them void. Foltz v. St. Louis & S. F. Ry. Co. (C. C. A.) 60 F. 316, 318; U. S. v. Ness (C. C. A.) 230 F. 950, 953, Ann. Cas. 1917C, 41. Until reviewed by virtue of the claim for abatement or tested by action in the courts of the United States following payment by plaintiff and claim for refund, this determination stood. Plaintiff might accept it or protest it, but until a different basis of computing the tax was arrived at, either by the commissioner or by a judgment, the last act necessary to make this tax collectible stood accomplished. And this was done before repeal, as the first assessment was certified in 1920, payment being demanded in April, 1921. At that time, and without any assessment, the United States could have sued for tax then computed to be due, and from that time on, up to the final recomputation and accession to plaintiff's contentions in that regard, could have sued for successive accruals of taxes, relying upon the first computation whether it was right or wrong. In such a suit the same defenses would have been open to plaintiff as those which finally led to the result actually accomplished through proceedings before the commissioner. U. S. v. Chamberlin, 219 U. S. 250, 31 S. Ct. 155, 55 L. Ed. 204; U. S. v. Nashville, C. & St. L. Ry. (C. C. A.) 249 F. 678; U. S. v. Ayer

(C. C. A.) 12 F.(2d) 194. Hence, applying the test suggested by plaintiff, that it must appear that the taxes had become due and collectible prior to the repeal of sections 500 and 501 (d), I must hold that these taxes had accrued within the meaning of section 1400 (b) of the Revenue Act of 1921.

In considering the correctness of the determination of the amount of tax due, it is to be remembered that the plaintiff admits that the computation represents the 8 per cent. due for the actual transportation of oil upon the basis of a reasonable charge. It is argued, however, that because the notice of allowance of the claim for abatement July 24, 1924, allocated the tax paid to the second assessment which covered the period from April 1, 1919, to September 30, 1921, plaintiff is entitled to recover the taxes paid for transportation of oil during the months of October, November, and December of 1921, which were not covered by the second assessment. I cannot agree with this conclusion. The tax was actually paid under protest, not upon any one of the three assessments, but upon the demand for payment on the basis of the recomputation, March 19, 1924. The subsequent allocation of the amount abated to the second assessment must be regarded as merely a convenient form of completing the department record and cannot be made the basis for a claim that the tax for the last three months of 1921 was not properly collected, especially as the Revenue Act of 1918 itself (section 502) provides that the tax (once computed) is due and payable without assessment. Section 502, referred to, also affords the basis for the collection of the interest charged.

The question of the constitutionality of the statute remains to be discussed. There can be no question of the general validity of this excise tax upon the privilege of transporting oil, by pipe line. Meischke-Smith v. Wardell (C. C. A.) 286 F. 785; Motter v. Derby Oil Co. (C. C. A.) 16 F.(2d) 717; Dixie Oil Co. v. U. S. (C. C. A.) 24 F.(2d) 804. Plaintiff's first attack upon the constitutionality of the statute is upon the ground that the delegation to the commissioner of the power to find the reasonable charge for transportation to be taken as a basis for computing the tax is an unconstitutional delegation of legislative power. The taxing statute, however, designates the thing to be taxed (transportation of oil), fixes the rate of taxation (8 per cent.), and levies the tax. The only thing remaining to

be determined is, in the case of taxpayers situated as is plaintiff, the reasonable charge for transportation to be used as a basis for computing the tax levied. The commissioner is left to find a fact, which in the nature of things Congress could not find in advance; what he is required to do is merely in execution of the act of Congress in levying this transportation tax. This is not a delegation of legislative power contrary to the Constitution. Hampton, Jr., & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624.

■ Nor can it be said that the failure of the statute to provide for a hearing before the commissioner prior to his determination of a reasonable charge for the transportation constitutes a denial of due process. Hagar v. Reclamation District No. 108, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569. Assuming that plaintiff, in view of its concession that the charge actually fixed is reasonable, is in a position to raise this question, it is sufficient to say that the absence of provisions for hearing prior to the determination does not leave the taxpayer without remedy, as appears from the procedure followed by plaintiff itself. The question of the reasonableness of the charge may be presented to the administrative authority by means of claim for abatement, and, after payment, in a claim for refund. It may further be presented to the courts by such a suit as this. Although the question is not necessary to the determination of this case, I do not believe that were the matter in issue, I would be foreclosed from examining into the reasonableness of the charge fixed by the commissioner by the case of Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, relied upon by the defendant. That case denies review of the discretionary selection of one section of a statute rather than another as the proper section under which to make an assessment; whereas, the reasonableness of the charge determined under section 501 (d) would appear to me to be a finding of fact similar to those mentioned at page 560 of 277 U. S., 48 S. Ct. 589, in the Williamsport Case and open to review.

■ The final contention with regard to the constitutionality of the imposition of this tax upon plaintiff arises from the following facts: It is alleged in the complaint, and admitted in the answer, that during the period while the tax was in force "the contracts of plaintiff with its customers provided that said customers would pay any tax levied upon the product sold or delivered to them by plaintiff, or upon the transportation thereof; that in the absence of an establishment by the Department of Internal Revenue of rates upon which the tax could be based, plaintiff was totally unable to and therefore did not collect any such tax from its customers." Plaintiff's standard contract is attached to the complaint as an exhibit, the pertinent portion reading: "Any internal revenue tax, war tax, impost, tonnage tax, shipping tax, or other tax or charge of any kind hereafter made effective (whether similar to the taxes and charges herein before specified or not) and levied by governmental authority on the said oil delivered hereunder, its container, on any pipe line, or on any boat that may be used in transporting said oil, its tackle, apparel or furniture, or on the transportation of said oil, or on this contract, the price, or any matter connected with this Contract, shall be added to the price of the said oil herein stated, and shall be paid by the Buyer while the same is in effect, unless the Buyer elects to terminate this Contract; whereupon, unless the Seller elects to pay such tax or charge, this contract shall terminate."

It is argued that since the course of events was such that plaintiff could not collect the tax from its customers at the time when transportation occurred the tax lost its ostensible character as an excise tax which could be passed along to the consumer and became as applied to plaintiff, a direct tax unconstitutional as in violation of article 1, § 2, clause 3, and article 1, § 9, clause 4, of the Constitution. It should be noted once more that the thing taxed is transportation; neither the oil transported nor the sales thereof are taxed. The complaint and the annexed contract show that the purchasers of oil agreed to add the amount of certain taxes to the purchase price of the oil, but they do not show that these purchasers of oil paid for the transportation even indirectly. Nor does it appear that title to the oil passed to them prior to the transportation of the oil. Wheeler Lumber, etc., Co. v. U. S., 281 U. S. 572, 50 S. Ct. 419, 74 L. Ed. 1047. It is specifically alleged that no direct charge for transportation was made. On this state of the record plaintiff itself was the "consumer" of transportation, subject, as any other owner of oil transporting his own products by pipe line, to this excise tax. Dixie Oil Co. v. U. S. (C. C. A.) 24 F.(2d) 804; Wheeler Lumber, etc., Co., v. U. S., 281 U. S. 572, 50 S. Ct. 419, 74 L. Ed. 1047. I am not called upon, therefore, to speculate as to the situation were

it apparent that plaintiff's customers were chargeable with the transportation cost and tax, and that plaintiff was unable to collect the tax from those from whom it was rightly due. In the present case, I must hold that it was plaintiff's corporation which was liable for the tax, and that it was as to plaintiff a valid excise tax.

Plaintiff's motions to strike out certain evidence offered by defendant and for special findings are denied. Exception noted. Following the suggestion in Parker v. St. Sure, 53 F.(2d) 706, decided by the Circuit Court of Appeals for the Ninth Circuit on October 26, 1931 (see Supplement to Manual of Federal Procedure by Paul P. O'Brien, pp. 5 and 6), this opinion is adopted by me as my findings of fact and conclusions of law.

Defendant's motion for judgment is granted and plaintiff may have an exception. I find generally for defendant. Let judgment be entered accordingly, with costs.