On Rehearing
FOURNET, Chief Justice.
When these consolidated cases were before us on original hearing we found that, for lack of the jurisdictional amount, we were without appellate jurisdiction of plaintiff’s suit against George Montgomery, State Tax Collector, and transferred the latter’s appeal to the Court of Appeal for the Parish of Orleans;[1] and with respect to plaintiff’s suit against Lionel G. Ott, the Tax Collector for the City of New Orleans, it was decided by a divided court[2] to affirm the judgment of the Civil District Court ordering a refund to plaintiff of personal property taxes for the year 1948 paid to the City under protest, the said taxes having been levied on certain of plaintiff’s electrical appliances and machinery which had been leased to agencies of the federal government and were located on six separate sites within the City of New Orleans either owned or occupied by the United States,[3] the majority of the Court having subscribed to the view that the case of Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091, had passed on the identical question presented herein and was there *691 fore controlling.[4] The further point was made, with respect to one of the sites the ownership of which had been acquired by the United States subsequent to the 1940 amendment to 40 U.S.C.A. § 255, and the objection that the federal government had never accepted jurisdiction as therein required, that under the provisions of Louisiana Act 12 of 1892,[5] all jurisdiction was ceded and relinquished by the State of Louisiana to the United States.
The provision of the United States Constitution stressed by the plaintiff is found in Article 1, § 8 — Clause 17 of which provides : “The congress shall have Power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * Also pertinent to a decision in this case is a portion of U. S. Code Annotated, Title 40, § 255, as amended by the Act of February 1st, 1940, requiring an express acceptance by the United Sates of jurisdiction, exclusive or partial, over lands or interests acquired subsequent to 1940.[6]
*693 In the year 1948, when the subject personal property taxes were levied and paid under protest by the plaintiff, the locations occupied by the governmental agencies wherein the plaintiff’s business machines were used fall into three categories: (a) properties, title to which was acquired by the federal government prior to February 1, 1940, and held by the government in full ownership — i. e., the Port of Embarkation, the Customs House, and the Naval Repair Base (Algiers); (b) properties, title to which was acquired subsequent to the February 1, 1940 amendment to 40 U.S.C.A. § 2SS — i. e., property at Franklin Avenue and the Lakefront; and (c) lands or buildings not owned by the United States, but occupied by the government under a lease or without cost — i. e., office space in the Masonic Temple building and the U. S. Army Engineer Depot, located at the foot of Prytania Street and owned by the Orleans Lévee Board.[7]
In his application for rehearing, the defendant-appellant contends that this Court erred in its construction of the U. S. constitutional and statutory provisions referred to above, and the interpretation placed on decisions of the United States Supreme Court, particularly that of Surplus Trading Co. v. Cook, supra; he denies that the plaintiff is granted immunity from state and municipal taxation under those laws; argues that, unless the federal laws can be interpreted so as to give immunity to plaintiff, the laws of Louisiana cannot be said to grant such immunity; and contends that even if they could be so construed, the result would be violative of the Constitution *695 of this State, which sets forth exactly which property, “and no other,” is exempt from taxation, Article X, § 4.
On the other hand, counsel for plaintiffappellee in brief on rehearing, after stating that no new issues are presented,[8] submit that the matters forming the basis of divergence between the majority and dissenting opinions are (a) acceptance by the United States of exclusive jurisdiction over the sites involved, (b) the constitutional validity of Act 31 of 1942, and (c) effect of Section 255 of Title 40, U.S.C.A. Counsel argue, as to (a), that such acceptance will be presumed in the absence of evidence of a contrary intent; as to (b), that a sovereign may, by ceding to another sovereign its jurisdiction over certain locations, divest itself of the right to exercise further jurisdiction therein; and as to (c), that it is therefore immaterial whether or not the United States has, in fact, accepted jurisdiction under Section 255 of Title 40, U.S. C.A., as amended.
While a State has no power to cede away its territory to a foreign country, yet it can transfer jurisdiction to the general government; such was the holding of the Supreme Court of the United States in the cases of Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264, and Chicago, R. I. & P. R. Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270. In the opinion in the first case, the Court observed: “ * * * As instrumentalities, for the execution of the powers of the general government, they [forts, arsenals, and other buildings for public uses] are * * * exempt from such control of the states as would defeat or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the state would be desirable, we do not perceive any objection to its grant by the legislature of the state”, 114 U.S. 525, 5 S.Ct. 1004, 29 L.Ed. at page 270; and in the second case the Court interpreted its ruling in the former to have “held that it is competent for the legislature of a state to cede exclusive jurisdiction over places needed by the general government in the execution of its powers. * * *” 114 U.S. 542, 5 S.Ct. 1006, 29 L.Ed. at page 271. Although those cases did not involve the provision of the U. S. Constitution here invoked since there was not, within the terms of Article 1, § 8, a purchase of the tract by the consent of the Legislature of the State, the opinions did hold, as pointed out approvingly in the later case of Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991, which also involved a cession of jurisdiction by the *697 State,[9] that “ * * * although it did not appear that any application had been made therefor by the United States, yet, as it conferred a benefit, acceptance of the cession was to be presumed.” 146 U.S. 325, 13 S.Ct. 61, 36 L.Ed. at page 994.
The view of presumed acceptance of ceded jurisdiction, which was followed in certain cases,[10] was subjected to a thorough re-examination in two suits presented to the Court in the term beginning October, 1937: James v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155, and Silas Mason Co. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187.[11] In the Dravo case, immunity from a West Virginia “annual privilege tax” based on. gross receipts was sought by a Pennsylvania contractor with respect to sums collected under contracts with the United States for the building of structures within West Virginia, one of the issues being the territorial jurisdiction of the State to impose the tax as to work done on property acquired by the federal government. Questions were-presented concerning the construction and effect of the consent, given by State statute, to the acquisition by the United States. *699 of lands, as to which “Concurrent jurisdiction” was “ceded to the United States for all purposes * * [12] In the course of its opinion the Court, after noting that “The tax is not laid upon the government, its property, or officers?’, nor “upon an instrumentality of the government”, nor yet “upon the contract of the government?’, made the following pertinent observations: “The application of the principle which denies validity to such a tax has required the observing of close distinctions in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both nation and state under our dual system?’ 302 U.S. 134, 58 S.Ct. 216, 82 L.Ed. at page 167; emphasis ours. And in the Silas Mason case, supra, where the appellant questioned the validity of a similar tax, one of the issues presented was whether certain of the areas in which the contractors' work was performed were within the exclusive jurisdiction of the United States, in view of acquisition by the U. S. and the provisions of the State statute.[13] The Court found no violence done to a Federal right nor frustration of Federal intent by the State court’s construction of its statute, i. e., that it did not apply to the Federal acquisitions involved, but also found that, even if the State statute should be construed to apply, the government was not compelled to accept nor had it accepted *701 a transfer of exclusive jurisdiction, and “The mere fact that the Government needs title to property withvn the boundaries of a State * * * does not necessitate the assumption by the Government of the burdens incident to an exclusive jurisdiction.” 302 U.S. 186, 58 S.Ct. 244, 82 L.Ed. at page 202; emphasis ours. On the facts, it was found that the continued jurisdiction of the' State'had been fully recognized by com-pliance with various State laws and regula-' tions, and that the State had territorial jurisdiction to impose the tax.
We think the views expressed in those opinions are decisive insofar as exclusive Federal jurisdiction is here claimed for the sites acquired by the United States prior to February 1, 1940. The fact that the Legislature of a State has ceded exclusive jurisdiction is not the controlling consideration; reference must be had to the circumstances of the case, which may well be evidence of intention on the part of the United States not to accept the grant. In the instant case it was shown that various services (fire protection, sewerage, water and drainage facilities, police traffic regulation) furnished by the City of New Orleans were used by the various locations, and'that the United States has failed to indicate an intention to exercise control in those respects; in fact, the acceptance of such services manifested a contrary intent on the part of the Federal Government. Silas Mason Co. v. Tax Commission of Washington, supra. We think, upon further analysis and study, that the rule of Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 456, 74 L.Ed. 1091, it not to be applied to the instant factual situation. In that case the U. S. Supreme Court was careful to point out that Camp Pike came directly within the words “ ‘forts, magazines, arsenals, dockyards, and other needful buildings’ ” of the constitutional provision, which decreed “ ‘exclusive legislation in all cases whatsoever’ over a place so purchased for such a purpose.”
With respect to properties, title to-which was acquired by the United States, subsequent to February 1, 1940, there is. no merit in plaintiff’s claim that its machines located thereon are not subject to. the State and municipal tax; the United States has not accepted jurisdiction, either exclusive or partial, according to the requirements of Title 40 U.S.C.A. § 255, as. amended on that date, requiring the indication of. acceptance by the United States— lacking which “it shall be conclusively presumed that no such jurisdiction has been accepted.” In Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122, 1123, 87 L.Ed. 1421, it was held that the Federal court had no jurisdiction of a prosecution for an alleged offense- which occurred within the confines of Camp Claiborne, Louisiana, since the Government had not accepted jurisdiction in the manner required by Title 40- U.S.C.A. § 255, and “In this view it is-immaterial that Louisiana statutes author *703 ized the government to take jurisdiction * * * "[14]
Plaintiff's claim for freedom from taxation of its machines located on lands .and buildings not owned by the United States, but occupied under a lease or without cost, must necessarily fail since its claim is based entirely on the provisions of the State statute.
We know of no authority, nor has any been cited, to support the argument of counsel for plaintiff that the Legislature •of Louisiana, by ceding jurisdiction to the United States, has deprived the State and its subdivisions of exercising any jurisdiction, “and particularly any tax jurisdiction;” and we think it is wholly without merit.
For the reasons assigned, the judgment •of the District Court in International Business Machines Corporation v. Lionel G. •Ott, Commissioner of Finance, City of New Orleans, is reversed and set aside and plaintiff’s suit is dismissed.

. The decree in the ease of International Business Machines Corporation v. George Montgomery, State Tax Collector, was not disturbed on application for rehearing, and that judgment has become final.

. Three members dissented, a fourth concurred in the decree.

.A seventh site on which the leased machines were used was space occupied by an agency of the Federal government in the Masonic Temple under an unrecorded lease of which there was no copy in the record, so, as to the taxes on plaintiff’s machines located on that site, the case was remanded to the district court for further evidence.

. That case held that, in view of Article 1, § 8, cl. 17 of the U. S. Constitution, private personal property located within any army camp, the lands for which had been acquired by the United States with the consent of the Legislature of the State in which the lands are situated, cannot be subjected to state taxation.

. Act 12 of 1892, as amended by Act 31 of 1942 (the source, in the Revised Statutes of 1950, of LSA-R.S. 52:1), declares, in pertinent part: “That the United States may enter upon and occupy any land in the State of Louisiana which it has heretofore acquired, or may hereafter acquire, by purchase, condemnation, lease or otherwise, required for sites for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States, and shall have the right of exclusive jurisdiction over the property -so acquired, during the time that the United States shall be or remain the owner or lessee thereof, for all purposes, except that the State retains the right to serve therein all civil and criminal process issuing under authority of the said State, and all lands so held and title shall be and remain exempt from all to which is vested in the United States state, parochial, municipal or other taxation, assessment or other charges which may be levied or imposed by or under authority of this State.”

.Title 40 U.S.O.A. § 255, as amended, provides in pertinent part: “Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not thereto *693 fore obtained, over any such lands or interests as be may deem desirable and indicate acceptance of sucb jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such “jurisdiction has been accepted.”

. The Port of Embarkation was acquired by purchase from the Board of Commissioners and by quitclaim from the City of New Orleans and the Public Belt Railroad in 1928.
The .Customs House was acquired by donation from the City of New Orleans in 1848.
The Naval Repair Base at Algiers occupies land which was expropriated by the United States in 1993.
The property at Franklin Avenue and the Lakefront is a portion of gronnd which was acquired by the United States in full ownership by judgment dated August 10, 1942, and March 19, 1945.
The ofiice space in the Masonic Temple Building is leased to a governmental agency by the owners, the Grand Lodge of Louisiana.
' The U. S. Army Engineer Depot, located at the foot of Prytania Street, is being occupied without cost for 100 years from 1914, by agreement with the owners, The Board of Levee Commissioners of the Orleans Levee District.

. In their original brief counsel phrased the legal question in these words: “Can the State of Louisiana or a subdivision, levy an ad valorem property tax on personal property located on a site over which exclusive jurisdiction has been. ceded to the United States?”

. In the Benson case the defendant, accused of a murder committed on the Fort Leavenworth military reservation, unsuccessfully raised a plea to the jurisdiction of the U. S. Circuit Court for the District of Kansas, by which he had been convicted and sentenced to be hanged. The reverse situation was presented more than 70 years before (1819) to General ..Sessions, New York, when a defendant, indicted for assault and battery on a deputy sheriff in the execution of his office — the offense having been committed on Governor’s Island which the Legislature of New York had declared “shall hereafter be subject to the jurisdiction of the United States” — sought by plea to exclude the jurisdiction of the Sessions, which plea was overruled and the defendant ordered to answer since there was no showing “ * * * that the United. States have accepted the act of this state respecting Governor’s Island, nor that they have exercised the power of exclusive legislation * * People v. Lent, 2 Wheeler, Cr.Cas.,N.Y., 548.

. People v. Mouse, 203 Cal. 782, 265 P. 944, certiorari denied 278 U.S. 614, 49 S.Ct. 19, 73 L.Ed. 538; appeal dismissed 278 U.S. 662, 49 S.Ct. 13, 73 L.Ed. 569: State v. Seymour, 78 Miss. 134, 28 So. 799.

. In the decade preceding 1937, claims based on inter-governmental tax immunity had come to be examined with a critical eye. There was denial of immunity from Federal income tax as to-gain derived from the sale of municipal securities, Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, and from Federal excise tax to a state enterprise-of a private character, i. e., sale of spiritous liquors. Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307. The claimed immunity of a state or its-agencies from Federal taxation was subjected to a more rigid interpretation, and. commodities sold to a state were held not to be embraced within the immunity doctrine with respect to federal taxes on their transportation, Wheeler Lumber Bridge & Supply Company v. United States, 281 U.S. 572, 50 S.Ct. 419, 74 L.Ed. 1047, on their importation, Board of Trustees of the University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025, and on their manufacture, Liggett & Myers Tobacco Co. v. United States, 299 U.S. 383, 57 S.CL 239. 81 L.Ed. 294.

. The views of the government on the issues in the case were invited, and were presented upon re-argument and in brief. The United States disclaimed all interest in the immunity sought by its contractors and urged the Court to sustain gross receipts taxes on public contractors. In its opinion the Court noted that, “As the Solicitor Ceneral has pointed out, a transfer of legislative jurisdiction carries with it not only benefits, but obligations, and it may be highly desirable, in the interest both of the national government and of the state, that the latter should not be entirely ousted of its jurisdiction. The possible importance of reserving to the state jurisdiction for local purposes which involve no interference with the performance of governmental functions is becoming more and more clear as the activities of the government expand and large areas within the states are acquired. There appears to be no reason why the United States should be compelled to accept exclusive jurisdiction or the state be compelled to grant it in giving its consent to purchases.” 302 U.S. 134, 58 S.Ct. 215, 82 L.Ed. at page 166.

. Section 8108 of Remington’s Revised Statutes of Washington, which is quoted in the margin of the Court’s opinion, gives the consent of the State of Washington to the acquisition by purchase or condemnation by the United States of land within the State, “the consent herein and hereby given being in accordance with the seventeenth clause of the eighth section of the first article of the Constitution of the United States, and with the acts of congress in such cases made and provided; and the jurisdiction of this state is hereby ceded to the United States of America over all such land or lands as may have been or may be hereafter acquired by purchase or by condemnation, or set apart by the general government for any or either of the purposes before mentioned * * (Providing that there be concurrent jurisdiction for service of civil or criminal process.)

. The Court took occasion to mention that the amendment to Title 40, U.S.C.A. § 255, followed its decisions in James v. Dravo Contracting Co. and Silas Mason Co. v. Tax Commission, observing that “These cases arose from controversies concerning the relation of federal and state powers over government property and had pointed the way to practical adjustments. The bill resulted from a cooperative study by government officials, and was aimed at giving broad discretion to the various agencies in order that they might obtain only the necessary jurisdiction. The Act created a definite method of acceptance of jurisdiction so that all persons could know whether the government had obtained ‘no jurisdiction at all, or partial jurisdiction, or exclusive jurisdiction.’ ” 319 U. S. 314, 63 S.Ct. 1123, 87 L.Ed. at page 1423.