**LUCKY LAGER BREWING COMPANY,
Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

**No. 15334.**

United States Court of Appeals
Ninth Circuit.

June 24, 1957.

Rehearing Denied July 29, 1957.

Valentine Brookes, Arthur H. Kent, Russel Shearer, San Francisco, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, Hilbert P. Zarky, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and CHAMBERS and BARNES, Circuit Judges.

DENMAN, Chief Judge.

This is a petition by the Lucky Lager Brewing Company, hereafter petitioner, to review a decision of the Tax Court assessing a deficiency against it in the amount of $102,343.94 in excess profits tax for the calendar year 1950.

To meet the expenses of the Korean war Congress imposed an excess profits tax on corporate income with a special provision favoring corporations showing an exceedingly large growth during the period immediately before the war. The Tax Court held that petitioner's income history did not bring it within the favored class of growth corporations, and petitioner here seeks review of that decision.

Under Section 435 of the Internal Revenue Code of 1939, enacted in 1951, 26 U.S.C.A. Excess Profits Taxes, § 435, the excess profits tax imposed by Section 430 of the Code, 26 U.S.C.A. Excess Profits Taxes, § 430, applies only to the portion of the 1950 income of a corporation which exceeds its income during a base period of the statute. Two alternative methods are provided for determining the amount of corporate income during the base period which is to be deducted from (or taken as a "credit" against) the 1950 income of the corporation, thereby reducing the amount of the 1950 income which is subject to the excess profits tax.

The first method for determining the amount of this "credit" is set forth in Section 435(d) of the Internal Revenue Code of 1939 which provides in substance that the amount of the corporation's income subject to the excess profits tax is determined by deducting therefrom the average income of the corporation

during its three best years of the four-year period 1946–1949. This is the method which was applied in the present case by the Tax Court.

The second alternative is provided for in Section 435(e) of the Code. It is petitioner's contention that this method is applicable to this case. This section provides that a corporation's credit against its 1950 income for the purposes of the excess profits tax may be based upon its income in 1949 alone, rather than its average income for three years of the four-year base period, if the corporation meets the special requirements of a "growth" corporation set forth therein. The only such requirement with which we are concerned on this appeal is the subpart of Section 435(e) (1) (A) (ii) which provides that "the gross receipts of the taxpayer (as determined under paragraph (5)) for the last half of its base period is 150 per centum or more of its gross receipts for the first half of its base period."

Paragraph (5) of Section 435(e) defines "gross receipts" as follows:

"Gross Receipts. As used in this subsection the term 'gross receipts' with respect to any period means the sum of:

"(A) The total amount received or accrued during such period from the sale, exchange, or other disposition of stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business, and

"(B) The gross income, attributable to a trade or business regularly carried on by the taxpayer, received or accrued during such period excluding therefrom—

"(i) Gross income derived from the sale, exchange, or other disposition of property;

"(ii) Gross income derived from discharge of indebtedness of the taxpayer;

"(iii) Dividends of stocks of corporations; and

"(iv) Income attributable to recovery of bad debts."

It is conceded that if the term "gross receipts" as defined above is what the buyer paid for the beer regardless of the $8.00 per barrel federal excise tax on beer [1] which the petitioner paid prior to its sale, then the petitioner's gross receipts during the last half of the base period, 1948–1949, were not 150% of its gross receipts during the first half of the base period, 1946–1947. Hence, if its gross receipts are what the buyer paid for the beer the selling petitioner is not a "growth" corporation under Section 435(e), and the amount of its 1950 income which is subject to the excess profits tax must be determined by deducting from its income for that year its average income during its three best years during the base period under Section 435(d), rather than its 1949 income under Section 435(e). On the other hand, if petitioner's contention that "gross receipts" as defined above does not include the federal beer excise tax is correct, then petitioner's gross receipts in 1948–1949 were 150% of its gross receipts in 1946–1947, and petitioner is a "growth" corporation under Section 435(e), and is entitled to calculate its credit under that section.

The contention of petitioner is that the word "gross" in the term "gross receipts" means what the buyer paid for the beer less what the manufacturer paid to the government prior to its sale under the excise tax, enacted in 1939. As far as we are able to analyze petitioner's contention, it seems to be that the tax, in effect, is on the buyer and that the selling petitioner here in receiving his payment for the beer acted in two capacities: one as a collector for the government of a tax on the buyer and the other as recipient of payment of the

1. Under Section 3150 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3150.

The amount of this tax was unchanged during the period of 1946–1949.

remainder of the sales prices for the beer itself.[2]

We do not agree. The language of paragraph (5) of Section 435(e) that "gross receipts" are "the *total* amount received or accrued * * * from the sale * * * of stock in trade" [emphasis supplied] is irrefutably plain. It is a logical absurdity to contend that the "total amount received" from the sales is not what the customer paid but a lesser amount determined by a deduction of a particular tax paid, here required to be paid and in fact paid by the seller, before the delivery of the beer. A similar case is Liggett & Myers Tobacco Co. v. United States, 1937, 299 U.S. 383, 57 S.Ct. 239, 240, 81 L.Ed. 294, where the Court of Claims held the tax on tobacco manufactured by the tobacco company and sold by it to the State of Massachusetts, was laid on the manufacturer, the statute providing that:

"Upon all tobacco and snuff manufactured in or imported into the United States, and hereafter sold by the manufacturer or importer, or removed for consumption or sale, there shall be levied, collected, and paid * * * a tax of 18 cents per pound, to be paid by the manufacturer or importer thereof," Revenue Act 1926, § 401(a), 26 U.S.C.A. Int.Rev.Acts, page 266,

just as here the tax on beer is to be paid by the maker of the beer. It was there contended that the burden of the tax fell upon the State of Massachusetts, the buyer. Answering this, the court stated:

"For the United States it is said the tax was upon the manufacture of the tobacco with duty of payment postponed until removal or sale, whichever first occurred; consequently, there was no direct burden imposed upon the State; the effect was incidental, indirect, and permissible within the doctrine approved by Cornell v. Coyne, 192 U.S. 418, 24 S.Ct. 383, 48 L.Ed. 504, and Wheeler Lumber Bridge & Supply Co. of Des Moines, Iowa v. United States, 281 U.S. 572, 579, 50 S.Ct. 419, 421, 74 L.Ed. 1047.

"If, in reality, the tax was upon the manufacture of tobacco, then, as adequately pointed out by Cornell v. Coyne, supra, the effect upon the purchaser was indirect and imposed no prohibited burden. See Willcuts v. Bunn, 282 U.S. 216, 230, 234, 51 S.Ct. 125, 128, 130, 75 L.Ed. 304. We think that was the true nature of the exaction, and this renders unnecessary any consideration of the theory accepted by the Court below.

"The tax is laid upon each pound of manufactured tobacco irrespective of intrinsic value or price obtained upon sale. The goods may be disposed of at any price without affecting the amount of the tax; that does not vary. Always the manufacturer must pay 18 cents upon each pound—no more, no less. True the limit of time for making payment is when the product is sold or removed, but this is a privilege designed to mitigate the burden; it indicates no purpose to impose the tax upon either sale or removal."

The gross receipts also included a California excise tax of 63 cents per barrel. In our view of the case we do not reach the question of this California excise tax because if the federal tax is included in gross receipts a deduction of the state tax would not qualify petitioner as a *growth corporation* under Section 435(e).

The decision of the Tax Court is affirmed.

CHAMBERS, Circuit Judge (concurring).

I think we must hold here as Judge Denman holds. I have been troubled by

---

2. It appears that the petitioner, both in its income tax returns and its reports to its stockholders, treats what it calls its "gross sales", as the amount from which is subtracted the amount of the tax with the other allowable deductions to determine its net income.

what we might have done if our case were that during the critical period examined the beer taxes had been raised, the beer taxes successfully passed on to the consumer, and thereby it should be contended the taxpayer's base of growth would have enabled it, solely by means of the added tax, to qualify for the growth exemptions from excess profits taxes. What would we do? I now think we would have to let the taxpayer out of his excess profits taxes. In a market where the government tells a producer that out of every two dollars you sell your beer for, one dollar is for me and one is for you, we get an unfair result for Lucky Lager and we would get an unfair result in the case I suggest.

Also, I am impressed with the gross inequity we have between Lucky Lager and some competitor who may have attained the necessary growth by the accident that his beer was sold mostly in export. The latter's beer goes out free from the tax. In a practical concept, here Lucky Lager collected the tax from American beer drinkers for the government. But my practical concept is not the legal concept.

I reluctantly agree with Judge DENMAN'S construction.