**FRESNO GRAPE PRODUCTS CORPORA-
TION v. UNITED STATES.**

L–161.

Court of Claims.

June 3, 1935.

Robert A. Littleton, of Washington, D. C. (Melvin D. Hildreth, Mason, Spalding & McAtee, and Edwin R. Boyd, all of Washington, D. C., of counsel), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, during the period involved, operated a bonded warehouse in the city of New York for the storage of wine, in which was stored a quantity of wine which had been manufactured in the state of California prior to the effective date of the National Prohibition Act (27 USCA § 1 et seq.). During the period of war time and national prohibition, plaintiff conducted its operations in accordance with the statutes and regulations of the Treasury Department. Under these statutes and regulations the plaintiff sold from time to time certain quantities of wine without adulteration for sacramental, medicinal, and manufacturing purposes, on the sales of which it duly paid the taxes imposed on wines by section 611 of the Revenue Act of 1918.[1] Such taxes are

---

[1] Sec. 611, Revenue Act 1918:
"That upon all still wines, including vermuth, and all artificial or imitation wines or compounds sold as still wine, which are hereafter produced in or imported into the United States, or which on the day after the passage of this Act are on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid, in lieu of the internal-revenue taxes now imposed thereon by law, taxes at rates as follows, when sold, or removed for consumption or sale:
* * *
"On wines containing more than 14 per -

not involved in this suit. During the period October 7, 1927, to June 15, 1928, plaintiff sold 33,750 gallons of wine to persons and firms holding basic permits under the National Prohibition Administration to purchase the same for the purpose of manufacturing vinegar, on which it also paid a tax of 40 cents per gallon, or $13,500. These are the taxes in controversy. Payment of the taxes was exacted under the provisions of Treasury Decisions 3942, of November 29, 1926, and 4000, of March 19, 1927 [2] (section 711 (b), art. VII, regs. 2), as a condition precedent to the conversion of the wine into vinegar stock and its delivery by plaintiff to purchasers.

The plaintiff contends that the tax on wine imposed by section 611 of the Revenue Act of 1918 was essentially a beverage tax, and that it attached and became payable only when "sold, or removed for consumption or sale" for beverage purposes; that the wine in question was neither sold nor removed from the warehouse for consumption or use as a beverage; that by the application of the glacial acetic acid it had ceased to be wine before it was removed from the bonded premises and delivered to purchasers; that in these circumstances the tax involved was a tax on the sale and removal from the bonded premise of vinegar stock, and that since section 611 contemplated a tax on wine only when it was sold or removed for consumption or sale as wine, the tax was erroneously and illegally imposed and collected.

The defendant concedes that section 611 of the 1918 Revenue Act did not impose a tax on vinegar stock and that if the wine in question had been converted into vinegar stock before the sale the tax would not have been collected, but contends that since the wine at the time it was sold by plaintiff to purchasers was a potable beverage containing 20 per centum of alcohol and had not at that time been converted into vinegar or vinegar stock, the tax was legally imposed and collected.

Section 611 of the Revenue Act of 1918 was a substantial re-enactment of section 402 (a) and (b), of the Revenue Act of 1916, approved September 8, 1916 (39 Stat. 783), which imposed a tax of 4 cents a gallon on wines containing not more than 14 per cent. of alcohol, 10 cents a gallon on wines containing more than 14 per cent. and not exceeding 21 per cent. of alcohol, and 25 cents a gallon on wines containing more than 21 per cent. and not exceeding 24 per cent. of alcohol. Subdivision (b) of this section provided that such taxes should be paid by stamp on removal of the wines for consumption or sale. When section 402, subdivisions (a) and (b), of the 1916 act was re-enacted in section 611 of the Revenue Act of 1918, in which the tax per gallon was greatly increased, substantially the same language was used in imposing the tax "upon all still wines, * * * when sold, or removed for consumption or sale." A careful consideration of the language of these sections, as well as prior statutes on the same subject, leads to the conclusion that Congress intended in section 611 of the Revenue Act of 1918 to impose the tax and direct its collection only when wine stored in a bonded premise was sold as wine, or when removed for consumption or sale as wine. This view is supported by the regulations of the Treasury Department prior to the promulgation of Treasury Decisions 3942 and 4000. Section 40, regs. 60 (February 1, 1920), and section 686, art. VI, regs. 60 (March 1924), and sub-

centum and not exceeding 21 per centum of absolute alcohol, 40 cents per wine gallon. * * *" (40 Stat. 1110).

[2] Treasury Decision 4000:

"Hereafter, before taxpaid wine is shipped or delivered from a bonded winery, bonded storeroom, or manufacturer's agency to the holder of a basic permit to manufacture vinegar, pursuant to permit to purchase, Form 1410–A, the wine will be converted into vinegar stock, as defined in Section 600(d) of Regulations 60, Revised.

"Conversion will be effected under the supervision of an officer detailed to such duty by the Prohibition Administrator of the district by the addition of not less than 1½ gallons of glacial acetic acid, U. S. P. (United States Pharmacopoeia), or the equivalent thereof of acetic acid, U. S. P. (approximately 4½ gallons) or of wine vinegar, to each 100 gallons of wine. * * *

"Where the wine is procured from a bonded winery or bonded storeroom the tax will be paid on the wine before conversion. * * *

"Where glacial acetic acid, U. S. P., or acetic acid, U. S. P., is used to effect conversion, the containers in which the vinegar stock is shipped will be marked 'Acetic Acid and Wine Vinegar Stock.' * * * *"

sequent regulations, provided that: "Wine which has unavoidably turned into vinegar or vinegar stock at bonded wineries and bonded storerooms may be removed therefrom free of tax, provided the same contains 1½ percent or more of acetic acid and is treated as vinegar and not sold or used as wine. A permit to use intoxicating liquor in the manufacturing of vinegar will not be required in such cases of involuntary manufacture. * * * If the chemical analysis of the samples shows the material to contain the required percentage of acetic acid, the vinegar may be removed from the winery free of tax in the presence of a Government officer, detailed to such duty by the collector. * * *" The same provision was continued in substance in section 711 (a), art. VII, regs. 2 (October 1, 1927). Section 600, art. VI, regs. 60, revised, provided that: "The presence of 4 percent acetic acid will be considered as constituting the article 'vinegar' and the presence of as much as 1½ percent of acetic acid will be considered 'vinegar stock.' * * *"

The Commissioner, we think, correctly construed the statute in the foregoing regulations providing for the sale and removal, free of tax, of vinegar and vinegar stock resulting from natural processes taking place in wine during storage in a bonded premise. Obviously a tax imposed upon the sale of wine, or its removal from a bonded warehouse for the purpose of consumption or sale, did not attach and was not intended to be collected when the wine had ceased to be wine and had, through natural processes, become converted into vinegar or vinegar stock before sale or removal. And this, we think, is also true when the wine, as in this case, has been converted into vinegar stock by the application of chemicals before its removal from the winery. The wine was converted into vinegar stock by the addition of 1½ gallons of glacial acetic acid to each 100 gallons of wine, as thoroughly and as completely as if it had unavoidably, through the processes of nature, been turned into that article.

 It is clear also that the Commissioner acted within his authority in authorizing and providing in Treasury Decisions 3942 and 4000 for the conversion of wine into vinegar stock before its sale or removal for vinegar manufacturing purposes, but we think he exceeded his authority in requiring by regula-

tions the payment of the tax as a condition precedent to its conversion into vinegar stock. The effect of the regulation was to impose a tax on the sale and removal of vinegar stock, not wine. The article taxed was vinegar stock according to the express definition of the term contained in Treasury Regulations in force and effect long prior to and at the time of the sale. And even if the article taxed was wine when the sales were made, it was not sold or removed for consumption or sale as wine, which was what the statute contemplated. While the applications made for a permit to make the purchases from plaintiff were entitled an "Application for Permit to Purchase Intoxicating Liquors for other than Beverage Purposes," and were filled in under printed headings, which might indicate that the person making application for a permit to purchase intended to purchase wine, the printed applications and the permits in question were used for general purposes and the information and descriptions filled in by the applicants and by the government officers, as well as by plaintiff, disclosed the businesses of the applicants and the purpose for which they desired to make the purchases. In addition, the permit to purchase issued in each case specified that the purchase was to be strictly in accordance with the statutes and the regulations. The regulations required that the wine be converted into vinegar stock before removal and delivery to the purchaser. Under the law, alcoholic wines could not be legally sold for beverage purposes. At the inception of each transaction involved in this proceeding the person desiring to make a purchase from plaintiff intended and desired to buy not wine, but vinegar stock. They gave the plaintiff to so understand in their advice to it and the price of the article to be delivered was fixed accordingly. The evidence shows that the vinegar manufacturers advised plaintiff of their desire to purchase vinegar stock, and were advised that the article would be furnished, and in each instance plaintiff advised the prospective purchaser to make application to the Bureau of Internal Revenue for a permit to purchase. After the person desiring to purchase had obtained the proper permit, he delivered his copy thereof to plaintiff, whereupon plaintiff proceeded to convert the specified number of gallons of wine into vinegar stock which was thereupon delivered to the pur-

chaser. It is clear that the substance of each offer was to purchase wine-vinegar stock. The plaintiff so understood. It certainly never delivered, or contracted to deliver, anything but vinegar stock. The fact that the vinegar stock delivered by plaintiff to purchasers was pure wine at the time the orders were received and accepted, and at the time the tax was paid, is not controlling. The sales were clearly not completed until the wine had been converted into vinegar stock and delivered to purchasers. Both plaintiff and its purchasers knew that under the statutes and regulations only vinegar stock could be removed from the warehouse and delivered on the permits to purchase wine issued by the National Prohibition Administration to vinegar manufacturers. Vinegar stock and not wine was what the plaintiff sold and delivered and vinegar stock and not wine was what purchasers paid for.

The Commissioner of Internal Revenue has authority to make reasonable regulations for the proper administration of the internal-revenue statutes, but he cannot by regulation change or enlarge their provisions. A regulation to be valid must be reasonable and must be consistent with law. International Ry. Co. v. Davidson, 257 U. S. 506, 514, 42 S. Ct. 179, 66 L. Ed. 341. The Secretary of the Treasury cannot by his regulations alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what Congress had enacted. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267. In the instant case, the statute imposes a tax and directs its collection on wines stored in a bonded warehouse when it is sold or removed from such premise for consumption or sale. The tax is not imposed on wine held in a bonded warehouse for sale, but it attaches and is payable only when wine so held is sold or removed for consumption or sale. The defendant admits in the brief, and the regulations, as we have seen, provide, that when wine stored in a bonded warehouse turns to vinegar from natural causes it is not taxable under section 611, upon sale or removal. It follows as a necessary corollary, we think, that no tax may be imposed upon wine that is designedly converted into vinegar stock by means of a formula prescribed by the regulations as effective for that purpose. The tax is clearly a beverage tax, and is laid on wine as such. It attaches only when the wine is sold, or removed for consumption or sale as wine. Treasury Decisions 3942 and 4000, therefore, so far as they provide for the payment of the tax as a condition precedent to the conversion of wine into vinegar stock and its delivery to purchasers for use in the manufacture of vinegar, are invalid, in that they go beyond the plain intent and purpose of the statute and make taxable an article intended by Congress to be tax free.

We attach no importance to the fact that Congress in section 451 of the Revenue Act of 1928 (26 USCA § 442) added a provision to section 611 of the Revenue Act of 1918 that wine might be "sold or removed tax free for the manufacture of vinegar, or for the production of dealcoholized wines containing less than one-half of 1 per centum of alcohol by volume." Nothing was said in the committees nor in the debates on the 1928 Act with reference to any change in section 611 of the 1918 Act other than that the rates on wine carried in the 1918 Act were being reduced. The change in section 611 may be regarded only as evidence of a policy then adopted by Congress that wines, as such, might, under proper regulations, be sold or removed tax free for the manufacture of vinegar, and cannot be construed as a congressional interpretation that wines might not be converted into vinegar stock and sold or removed without payment of the tax under the 1918 Act.

It is held that the plaintiff is entitled to recover, and a judgment in its favor is hereby awarded in the sum of $13,500, the amount of the taxes involved, with interest as provided by law from the dates of the respective payments.

It is so ordered.

BOOTH, Chief Justice, and WHALEY and GREEN, Judges, concur.

LITTLETON, Judge, did not hear and took no part in the consideration or decision of this case.