## LIGGETT & MYERS TOBACCO CO. *v.* UNITED STATES.*

No. 161.   Argued December 11, 14, 1936.—Decided January 4, 1937.

*Mr. Henry F. Long,* with whom *Mr. Paul A. Dever,* Attorney General of Massachusetts, was on the brief, for petitioners.

*Mr. J. P. Jackson,* with whom *Solicitor General Reed, Assistant Attorney General Jackson,* and *Messrs. Sewall Key* and *Charles A. Horsky* were on the brief, for the United States.

Mr. Justice McReynolds delivered the opinion of the Court.

These test suits, brought in the Court of Claims and based upon the same facts, seek to establish the right of some petitioner to recover the value of Internal Revenue stamps—$17.28—affixed by Liggett and Myers Tobacco

*Together with No. 162, *Massachusetts* v. *United States;* and No. 163, *Liggett & Myers Tobacco Co. on behalf of Massachusetts* v. *United States.*   On writs of certiorari to the Court of Claims.

Company to four boxes containing ninety-six pounds of tobacco, which it manufactured and sold to Massachusetts for free distribution to patients in Boston State Hospital, an institution maintained by the Commonwealth and alleged to be a government instrumentality immune from Federal taxation.

During January, 1932, federal statutes directed—

"Upon all tobacco and snuff manufactured in or imported into the United States, and hereafter sold by the manufacturer or importer, or removed for consumption or sale, there shall be levied, collected, and paid . . . a tax of 18 cents per pound, to be paid by the manufacturer or importer thereof." "The Commissioner, with the approval of the Secretary, shall prescribe and publish all needful rules and regulations for the enforcement of this Act." Revenue Act 1926, 44 Stat. 9, c. 27, §§ 401 (a), 1101; U. S. C., Tit. 26, §§ 700, 701, 1049, 1350, 1691.

Treasury Regulations No. 8 (1928 ed.) in force at the same time provided:

Art. 43. "The rate of tax on tobacco and snuff now in force is 18 cents per pound. . . . Such tax is imposed on all chewing and smoking tobacco. . . . The tax accrues on such manufactures upon removal from the factory or place where they were made, or upon sale prior to such removal, and is to be paid by the manufacturer thereof by the affixing of stamps before removal. . . ." Art. 52. "Each package containing a statutory quantity of tobacco or snuff (see article 45) shall, before removal from the bonded factory premises where made, have affixed thereto the proper internal-revenue stamp or stamps of such denomination as will cover fully the tax on the net weight of the contents. . . ." Art. 94. "No manufacturer of tobacco, snuff, cigars, or cigarettes will be permitted to close his factory with material or finished product unstamped on hand. . . ." Art. 152. "Every person who removes from any manufactory, or from any

place where tobacco or snuff is made, any manufactured tobacco or snuff without the same being put up in proper packages, or without the proper stamp for the amount of tax thereon being affixed and canceled as required by law; or if the same be intended for export, without the proper export stamp being affixed; shall for each such offense, respectively, be fined not less than $1,000 nor more than $5,000, and be imprisoned not less than six months nor more than two years."

The Court of Claims found—

Liggett and Myers Tobacco Company is engaged in the business of manufacturing and dealing in tobacco. It maintains a bonded warehouse for storing such products. The established Internal Revenue procedure was to affix the required stamps upon manufactured tobacco before removal from the factory. In January, 1932, the Company received from Massachusetts an order to deliver ninety-six pounds of tobacco to the Boston State Hospital, an institution owned and maintained by the Commonwealth. The Company complied by shipping from its bonded warehouse four packages to which Revenue stamps amounting to $17.28 had theretofore been affixed. This was distributed to patients without charge. Hospital patients, when able, pay for treatment. The Hospital performs useful public service. A bill for $30.62— price of the tobacco including tax—was paid by the Commonwealth.

And the Court held that operation of the Hospital by the Commonwealth is not the performance of an essential governmental function; that such operation is not of a strictly governmental character since it does not "embody some kind of control over persons or things which can be exercised only by a sovereign power." And for that reason the conclusion was that no immunity from Federal taxation had been shown. All of the petitions were dismissed.

Here counsel for the Commonwealth submit that the maintenance of the Hospital is a true governmental function entitled to immunity; also that the tax in question was laid upon the sale of the tobacco and amounted to an imposition upon the Commonwealth. They rely upon the principle approved in *Panhandle Oil Co.* v. *Mississippi ex rel. Knox,* 277 U. S. 218, 222; *Indian Motocycle Co.* v. *United States,* 283 U. S. 570, 578; and *Graves* v. *Texas Co.,* 298 U. S. 393.

For the United States it is said the tax was upon the manufacture of the tobacco with duty of payment postponed until removal or sale, whichever first occurred; consequently, there was no direct burden imposed upon the State; the effect was incidental, indirect, and permissible within the doctrine approved by *Cornell* v. *Coyne,* 192 U. S. 418, and *Wheeler Lumber B. & S. Co.* v. *United States,* 281 U. S. 572, 579.

If, in reality, the tax was upon the manufacture of tobacco, then, as adequately pointed out by *Cornell* v. *Coyne, supra,* the effect upon the purchaser was indirect and imposed no prohibited burden. See *Willcuts* v. *Bunn,* 282 U. S. 216, 230, 234. We think that was the true nature of the exaction, and this renders unnecessary any consideration of the theory accepted by the Court below.

The tax is laid upon each pound of manufactured tobacco irrespective of intrinsic value or price obtained upon sale. The goods may be disposed of at any price without affecting the amount of the tax; that does not vary. Always the manufacturer must pay 18 cents upon each pound—no more, no less. True the limit of time for making payment is when the product is sold or removed, but this is a privilege designed to mitigate the burden; it indicates no purpose to impose the tax upon either sale or removal. Apparently the practice is to affix the required stamps without regard to sale or removal.

See *Cornell* v. *Coyne, supra; American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Wheeler Lumber B. & S. Co.* v. *United States, supra.*

*Indian Motocycle Co.* v. *United States, supra,* much relied upon by petitioner, considered a tax of five per centum of the price obtained upon sale of the article; it rose or fell according to the amount received by the seller. From the outset the excise there under scrutiny had been considered by Congressional Committees and the administrative bureau as a sales tax. Here the administrative provisions of the taxing Act indicate that Congress regarded it as an excise on manufacture. And this view is strengthened by provisions of the Treasury Regulations designed to carry the statute into effect.

For the reasons indicated, the judgment below must be

*Affirmed.*

Mr. Justice Stone took no part in the consideration or decision of this case.