**ROGAN, Collector of Internal Revenue, v. CONTERNO.**

**No. 10178.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 31, 1942.

Rehearing Denied Feb. 16, 1943.

Joseph Lawrence, Director Bond & Spirits Division, Dept. of Justice, Harry B. DeAtley, Asst. to Director, Julian D. Simpson, Chief, Compromise Section, and Bernard Chertcoff, Sp. Asst. to Atty. Gen., all of Washington, D. C., and Leo V. Silverstein, U. S. Atty., and E. H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

Hanna & Morton, Harold C. Morton, and John H. Blake, all of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

A tax was assessed against defendant-appellee by the Commissioner of Internal Revenue in April, 1940, on wine destroyed by fire in a bonded winery during 1939. The tax was paid under protest and suit was instituted against Nat Rogan, the local Collector of Internal Revenue, for refund. Judgment went for plaintiff and the collector appeals.

The action went to trial upon the first amended complaint and answer thereto, before the court sitting without a jury under appropriate stipulation. The complaint contains two alleged causes of action. The first cause is cast upon the theory that the taxes collected never legally attached to the wine, and the second cause is cast upon the theory that the taxes having legally attached, the insurance collected was less than the value of the wine and that the owner was not indemnified for the tax, interest, penalties, and costs and that therefore, they should have been abated by the Government.

The record seems to indicate that the court tried only the first cause, but made findings pertinent, if not complete, as to the second cause.

To solve a rather confused situation, both parties in argument before us conceded that unless we should sustain the judgment, basing such action upon the first cause alone, the action should be remanded.

We quote the applicable part of Section 611, Revenue Act 1918, as amended, and so far as this case is concerned now, Section 3030(a) (1) (A), Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3030(a) (1) (A). "Upon all still wines, * * * produced in * * * the United States * * *, there shall be levied, collected, and paid taxes at rates as follows, when sold, or removed for consumption or sale:

"[Here follows specification of rates.]

"The taxes imposed by this subparagraph (A) of this paragraph, shall not apply to dealcoholized wines * * * nor, subject to regulations prescribed by the Commissioner, with the approval of the Secretary, to wines produced for the family use of the duly registered producer thereof and not sold or otherwise removed from the place of manufacture and not exceeding in any case two hundred gallons per year."

Appellant states his position as follows: "Briefly stated, the position of the appellant is that the tax in this case is actually

a production tax and not a sales or removal tax. In other words, the tax on the wine arose and the incidents of the tax attached as soon as it was produced in the bonded winery, although normally payment of the tax was not required by the statute until the wine was sold or removed for sale or consumption within the United States. The tax on the wine became due when it was destroyed by fire and was collectible, unless the taxpayer was relieved of payment by the Commissioner of Internal Revenue, pursuant to Section 3039(a), Internal Revenue Code [26 U.S.C.A. Int.Rev. Code, § 3039(a)]."

[We interpolate the cited code section.]

Section 3039(a), Internal Revenue Code, is as follows: "Power of Commissioner. The Commissioner, with the approval of the Secretary, is authorized to make such allowances for unavoidable loss of wines while on storage or during cellar treatment as in his judgment may be just and proper."

[Appellant's statement continues.]

"This position is fortified by a true analysis of the statute; the long continued, uniform and uninterrupted construction of same to that effect by the Treasury Department; the implied approval by Congress of this construction, since the provisions of the statute were reenacted without change in the face of such construction, and the further fact that to hold otherwise would render meaningless other pertinent sections of the very same revenue statute in which the tax on wine is levied."

The appellee and the trial court in its findings and judgment conclude that because the statute provides that "there shall be levied, collected, and paid taxes * * *, when sold or removed for consumption or sale * * *", and that since the wine was never sold and was never removed for consumption or for sale that the tax never did attach to the wine.

But notwithstanding appellee's earnest and in some of its phases convincing argument, we are at once confronted with the opinion and decision in Liggett & Myers Tobacco Co. v. United States, 299 U.S. 383, 57 S.Ct. 239, 240, 81 L.Ed. 294. In that case the court had before it the construction of a statute covering tax on tobacco, the applicable part thereof being as follows: "Upon all tobacco and snuff manufactured in * * * the United States, and hereafter sold by the manufacturer * * *, or removed for consumption or sale, there shall be levied, collected, and paid * * * a tax * * * by the manufacturer * * * thereof."

Tobacco was sold to the Commonwealth of Massachusetts for use in a governmental function and it is claimed by the commonwealth that the tax was laid upon the sale of the tobacco and that therefore the commonwealth had been imposed upon. Panhandle Oil Co. v. Mississippi ex rel. Knox, 277 U.S. 218, 222, 48 S.Ct. 451, 72 L.Ed. 857, 56 A.L.R. 583; Indian Motorcycle Co. v. United States, 283 U.S. 570, 578, 51 S.Ct. 601, 75 L.Ed. 1277; Graves v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236. The United States claimed the tax was a manufacturer's tax and that there was no direct burden imposed upon the commonwealth. The court held the tax to be a manufacturer's tax and that therefore the effect upon the purchaser was indirect, and imposed no prohibited burden, saying inter alia, "True the limit of time for making payment is when the product is sold or removed, but this is a *privilege* (emphasis ours) designed to mitigate the burden; it indicates no purpose to impose the tax upon either sale or removal." [299 U.S. 383, 57 S.Ct. 241, 81 L.Ed. 294.] Cornell v. Coyne, 192 U.S. 418, 24 S.Ct. 383, 48 L.Ed. 504; Wheeler Lumber B & S Co. v. United States, 281 U.S. 572, 579, 50 S.Ct. 419, 74 L.Ed. 1047. The stautes for tobacco and still wines are basically the same, using in a large part the same phraseology, and we are unable to arrive at any other conclusion than that the statutes would receive identical interpretation by the Supreme Court.

The part of the statute before us for interpretation, which provides for the nonapplicability of the tax to the limited quantity of wine withdrawn for the manufacturer's family use is consistent with this interpretation. A provision in the Revenue Act as it stood at the time of the tax levy authorizing "allowances for unavoidable loss of wines while on storage or during cellar treatment * * *" is consistent also. Revenue Act 1918, § 622, 26 U.S.C.A. Int.Rev.Code, § 3039(a). Section 616, Revenue Act 1918, 26 U.S.C.A. Int.Rev. Code, § 3040(a), also provided "Every person producing after February 24, 1919, or having in his possession or under his control * * * any wines subject to the tax imposed * * *" shall do various things, including filing notice of premises on which the wine is situated, he shall execute a bond, and inventories, all consistent with the fact that the intent was to tax the product, although in fairness it may be argued

that these requirements were made to protect the Government's tax interests when sale or removal takes place.

Regulations of the Treasury Department over many years indicate an interpretation consistent with the theory that the tax was a producer's tax. One of such provided for adjustment of taxes in case of loss by fire or other casualty and providing for the disallowance for loss where the producer has been indemnified by insurance. The latter being entirely unreconcilable with the claim that no tax attached until the wine was sold or removed for consumption when sold.

Of course, tobacco is manufactured and wine is produced for the purpose of sale, and both the tobacco and the wine will, in due course, be sold and removed from the place of production. Congress, in enacting tax laws, had this in mind and did not provide for the highly unlikely, mere possibility that the manufactured tobacco and the produced wine are to be or will be kept unsold or unmoved from the factory or the winery indefinitely. Knowing that in due course these commodities will be directed into trade channels, there is nothing strange in the fact that Congress withheld the payment of the tax until they had reached that status.

See also the opinion in the case of R. J. Reynolds Tobacco Co. v. Robertson, 4 Cir., 94 F.2d, 167, 169, in which it is said in reference to the Liggett & Myers case: "The tax was none the less a tax upon manufacture because it was not payable by the manufacturer or collectible by the United States until the sale or removal of the goods. This is the plain meaning of the statute. The reference in the regulations to the time of the accrual of the tax was obviously not intended as an official ruling that the tax was imposed upon the removal of the goods, and it could not have had this effect in view of the authoritative decision that the tax is imposed upon the manufacture of the goods."

We have carefully considered the case of Fresno Grape Products Corp. v. United States, reported in 11 F.Supp. 55, 81 Ct.Cl. 553. It is clear that the court in that case held that the tax was a beverage tax attaching only upon wines being sold or removed as wines and was not a production tax as contended for by the Government. We think the court erred in so holding. It is appropriate, too, to mention that the Fresno Grape case, supra, was decided June 3, 1935, and the Liggett & Myers Tobacco Co. case, supra, was decided January 4, 1937.

■ It is our opinion that the statutory governmental check and bookkeeping regarding the production of all wines, together with the several provisions for allowances, leaks, casualties, et cetera, following the direct requirement that the tax is applicable to all wines produced, is indicative that the viewpoint entertained by the Treasury Department over a long period of years is the correct one, to-wit: that the tax is a production tax with the tax applying to all wines produced with an abatement for certain losses and that deferment of the time of payment is a privilege given by the law to the producer. It follows that the assessment was made on the correct principle and that the producer-owner of the destroyed wine should not recover the sum paid, except insofar as under the law allowable losses should reduce or consume such sum.

■ The tax having attached and having been paid, the court should have entertained every proper proffer of proof and presentation of law upon the issue of claimed refund of part or all of the sum paid.

Reversed and remanded.