LUCKY LAGER BREWING COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53063.    Filed July 19, 1956.

*Valentine Brookes, Esq.*, and *Russel Shearer, Esq.*, for the petitioner.

*Aaron S. Resnik, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Although a large part of the argument of the parties is occupied with an examination of the characteristics of the Federal and State tax on beer, we think the true issue requires a consideration primarily of the scope and purpose of the growth formula in the 1950 Excess Profits Tax Act.[1]

In place of the net taxable income test of the wartime excess profits tax law,[2] the statutory approach adopted in 1950 was to determine growth by presumably objective tests,[3] one of which was the size of the corporation's "gross receipts." The issue here is whether there should be considered as part of petitioner's gross receipts the amounts of Federal and State excise taxes on beer which it claims increased the selling price petitioner received for its product. If the amount of the beer taxes is excluded from gross receipts, petitioner's figures show an increment to more than 150 per cent, which entitles it to use the growth formula. If they are included in gross receipts the percentage falls some 10 points lower and the growth formula is inapplicable.

The general approach of the 1950 Act was apparently an attempt to determine growth by an "increase" in "physical volume of production."[4] Probably recognizing the difficulties of using that measure directly, the result was sought to be accomplished by the use of one of

---

[1] SEC. 435. EXCESS PROFITS CREDIT—BASED ON INCOME.

(e) AVERAGE BASE PERIOD NET INCOME—ALTERNATIVE BASED ON GROWTH.—

(1) TAXPAYER TO WHICH SUBSECTION APPLIES.—A taxpayer shall be entitled to the benefits of this subsection if the taxpayer commenced business before the end of its base period, and if either—

(A) (i) the total assets of the taxpayer as of the first day of its base period (when added to the total assets for such day of all corporations with which the taxpayer has the privilege under section 141 of filing a consolidated return for its first taxable year under this subchapter), determined under paragraph (3), did not exceed $20,000,000, and

(ii) the total payroll of the taxpayer (as determined under paragraph (4)) for the last half of its base period is 130 per centum or more of its total payroll for the first half of its base period, or the gross receipts of the taxpayer (as determined under paragraph (5)) for the last half of its base period is 150 per centum or more of its gross receipts for the first half of its base period ; or

[2] Sec. 713 (f), I. R. C. 1939 (repealed by sec. 122 (a), Rev. Act of 1945).

[3] See footnote 5 *infra.*

[4] "The use of the alternative gross receipts test is justified by the fact that a corporation may increase its physical volume of production materially by introducing additional equipment and new operating procedures which do not involve a corresponding increase in its labor force. * * *" H. Rept. No. 3142, 81st Cong., 2d Sess., p. 24 ; S. Rept. No. 2679, 81st Cong., 2d Sess., p. 27.

two "automatic" [5] tests: Either an increase of 30 per cent in payroll or an increase of 50 per cent in "gross receipts." It is the meaning, and purpose of the use, of this term, which as to this issue is defined only as "The total amount received or accrued * * * from the sale * * * of stock in trade of the taxpayer * * *," [6] which poses the instant question.

Bearing in mind that it is an increase in physical volume of production with which the lawmakers were concerned, as petitioner apparently recognizes in its excellent brief, the question is what effect should be given to unit taxes, the rate of which did not increase during the base period. It can be accepted that percentage or ad valorem taxes would be neutral in such a situation since presumably they would increase in the same proportion as the total amount received from sales, at least unless the rate changed during the period. Similarly, a unit tax not based on any percentage of the selling price would be neutral if the amount of the tax were increased during the base period in the same proportion that gross receipts increased. Petitioner's situation was different. It was subject to a unit, not an ad valorem, tax and the rate did not change during the base period but remained constant.

Neither the gross receipts test nor the payroll test, which is the alternative, are direct measures of physical volume of production. Gross receipts may rise at least in part due to an increase in the price of the commodity sold, as they did in the present case. Theoretically an increase of 50 per cent in the selling price might, without any addition to physical volume, create a statutory eligibility which was not actually intended. Similarly, a rise of 30 per cent in payroll might come about solely by an increase in wage rates with no improvement.

[5] Petitioner, in its brief, quotes as "relevant" two passages from the committee reports (H. Rept. No. 3142, *supra*, at pp. 16 and 17; S. Rept. No. 2679, *supra*, at p. 18), including the statements that tests applied under the wartime Act were "largely a matter of subjective judgment" and referring to the 1950 Act as providing "automatic formulas for each of the most important types of cases." These statements were apparently made with reference to section 722. However, they may well represent the legislative frame of mind as applied to all the excess profits abnormality amendments.

[6] SEC. 435. EXCESS PROFITS CREDIT—BASED ON INCOME.
    (e) AVERAGE BASE PERIOD NET INCOME—ALTERNATIVE BASED ON GROWTH.—
        *       *       *       *       *       *       *
    (5) GROSS RECEIPTS.—As used in this subsection the term "gross receipts" with respect to any period means the sum of:
        (A) The total amount received or accrued during such period from the sale, exchange, or other disposition of stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of its trade or business, and
        (B) The gross income, attributable to a trade or business regularly carried on by the taxpayer, received or accrued during such period excluding therefrom—
            (i) Gross income derived from the sale, exchange, or other disposition of property;
            (ii) Gross income derived from discharge of indebtedness of the taxpayer;
            (iii) Dividends on stocks of corporations; and
            (iv) Income attributable to recovery of bad debts.

in physical volume. These possibilities were in the legislative mind but "the percentages used in the payroll and gross receipts tests" were deemed to be "sufficiently large so that only those taxpayers will be able to qualify *whose business has grown substantially more rapidly than the average * * *.*" [7] (Emphasis added.)

Petitioner suggests, we think correctly, that the tendency is to pass on to the consumer all possible costs of production. In ideal terms the growth formula will work best when all items of such costs, and therefore unit sales prices, remain static and any increase in gross receipts can hence be attributed solely to a growth in physical volume. The test selected by Congress must assume that most production costs will remain stationary, otherwise the formula adopted by it would have no direct relationship to any increase in the physical volume of production. By that test items which remain stable in their relationship to units produced, such as the taxes in the present case, do not throw the formula off nor make its workings inequitable. Nothing less would compel a departure from the literal statutory language.

Petitioner is in effect asking that we reject a simple and direct application of the term "total amount received" as including everything received by the corporation in its own right, and employ instead a meaning which will give effect to the statutory purpose. We need not determine whether such an approach is permissible. Even if it were, it seems to us that the object of the statute as shown by its legislative history will best be served by including all items actually received and particularly those which represent a stable and unchanging cost per unit.

On this approach to the meaning of the Excess Profits Tax provision, it is of no consequence whether the beer taxes are manufacturers' taxes or sales taxes. They were included in the amount received for its stock in trade by petitioner, and we see nothing in the statute or its background which will justify their elimination. It is not contended that such taxes, particularly the Federal tax,[8] are collected by the brewer as a trustee or fiduciary. While it may pass the economic burden of the tax to the purchaser, its failure to do so would not relieve it of the tax liability. *Lash's Products Co.* v. *United States*, 278 U. S. 175; *Liggett & Myers Co.* v. *United States*, 299 U. S. 383; *Shearer* v. *Commissioner*, (C. A. 2) 48 F. 2d 552; *R. J. Reynolds Tobacco Co.* v. *Robertson*, (C. A. 4) 94 F. 2d 167, certiorari denied 304 U. S. 563; *Casey Jones, Inc.* v. *Texas Textile Mills*, (C. A. 5) 87 F. 2d 454; *Continental Baking Co.* v. *Suckow Milling Co.*, (C. A. 7) 101 F. 2d 337; *Heckman & Co.* v. *I. S. Dawes & Son Co.*, (C. A., D. C.) 12 F. 2d 154; *Consolidated Distributors* v. *City of Atlanta*, 193 Ga. 853, 20 S. E. 2d

---

[7] S. Rept. No. 2679, *supra*, at p. 27.
[8] If the Federal tax is not eliminated, petitioner would not qualify even disregarding the State tax.

421; *Western Lithograph Co.* v. *State Board of Equal.*, 11 Cal. 2d 156, 78 P. 2d 731; cf. *Indian Motorcycle Co.* v. *United States*, 283 U. S. 570; *Fresno Grape Products Corporation* v. *United States*, (Ct. Cl. 1935) 11 F. Supp. 55; *F. Strauss & Son* v. *Coverdale*, 205 La. 903, 18 S. 2d 496; *Wayne County Produce Co.* v. *Duffy-Mott Co.*, 244 N. Y. 351, 155 N. E. 669. It cannot hence be said that amounts collected by petitioner, even though they effectively reimbursed it for the beer tax, were not its own "gross receipts."

*Decision will be entered for the respondent.*