BERCUT-VANDERVOORT & CO., INC. *v.* UNITED STATES (No. 4937) [1]

[1] C.A.D. 691.

United States Court of Customs and Patent Appeals, November 14, 1958

*Lawrence & Tuttle* (*Frank L. Lawrence* and *John R. Benney* of counsel) for appellant.

*George Cochran Doub*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.

Before O'CONNELL, Acting Chief Judge, and WORLEY, RICH, and MARTIN, Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, Third Division, C.D. 1877, which overruled the protest against the assessment of internal revenue taxes on certain imported distilled spirits, to wit, 90 proof "London dry gin," imported from Holland and entered for consumption at the port of San Francisco on August 19, 1952, which assessment was levied at the rate of $10.50 per wine gallon under section 2800(a)(1) of the Internal Revenue Code of 1939, as amended by 65 Stat. 527.

No question is raised as to the rate or amount of regular customs duties assessed on the imported gin under paragraph 802 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (GATT), T.D. 51802. Rather, the importer claims that the tax imposed under section 2800(a)(1) of the Internal Revenue Code of 1939, as amended, is inapplicable in view of section 615 of the Revenue Act of 1951, 65 Stat. 569, since such application is claimed to be contrary to the obligations assumed by the United States in

Articles II and III of the GATT, to wit, that the tax imposed on the imported under proof gin should not exceed that applied "indirectly," to like domestic products and that, therefore, the tax should have been assessed on the basis of the number of proof gallons equivalent to the imported wine gallon merchandise.[2]

Section 2800(a)(1) of the Internal Revenue Code of 1939, as amended, provided, in part, at the time of importation:

There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. * * *

Section 615 of the Revenue Act of 1951, 65 Stat. 569, entitled "Treaty Obligations," reads as follows:

No amendment made by this Act shall apply in any case where its application would be contrary to any treaty obligation of the United States.

The pertinent provisions of GATT as amended (T.D. 51802 and T.D. 52167), prior to the date of liquidation herein are as follows:

ARTICLE II

2. Nothing in this Article shall prevent any contracting party from imposing at any time on the importation of any product (a) a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product or in respect of an article from which the imported product has been manufactured or produced in whole or in part; * * *

ARTICLE III

1. The contracting parties recognize that internal taxes and other internal charges, and laws, regulations and requirements affecting the internal sale, offering for sale, purchase, transportation, distribution or use of products, and internal quantitative regulations requiring mixture, processing or use of products in specified amounts or proportions, should not be applied to imported or domestic products so as to afford protection to domestic production.

2. The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products. Moreover, no contracting party shall otherwise apply internal taxes or other internal charges to imported or domestic products in a manner contrary to the principles set forth in paragraph 1.

The evidence establishes that the imported merchandise was produced from grain neutral spirits of approximately 190 proof by redistillation and the subsequent dilution with botanicals and water until

---

[2] A standard United States gallon contains 231 cubic inches. 26 CFR (1949 Ed.) Section 186.148. A standard United States gallon containing 50 percent alcohol by volume and 50 percent water by volume would be 100 proof spirits which gallon of 100 proof spirits is known as a proof gallon. 26 CFR (1949 Ed.) Section 186.149. The terms "proof gallon," "100 proof" or "proof spirits" are used interchangeably herein. The terms "over proof" or "above proof" refer to spirits containing more than 50 percent alcohol by volume whereas the terms "under proof gallon" or "wine gallon" are used to refer to a standard United States gallon containing less than 50 percent alcohol by volume.

the alcoholic content was reduced to 90 proof. The product was then bottled and imported in that condition. The tax in question is imposed on this merchandise on the wine gallon basis.

The importer presented evidence below showing that it is the practice of domestic producers to withdraw the distilled spirits from bond while over proof, to pay the tax thereon on the proof gallon basis, and to thereafter further dilute the spirits to approximately 90 proof prior to bottling and marketing the product. The importer further proved the similarity between domestic under proof gin and the imported product with respect to taste, odor, and color. It was the importer's claim below which it strenuously renews here, that the assessment under section 2800(a)(1) of the Internal Revenue Code upon the imported 90 proof gin on the wine gallon basis subjects the imported product to "internal taxes * * * in excess of those applied, * * * indirectly, to like domestic products," in contravention of Article III, section 2 of GATT, since the domestic 90 proof gin has allegedly "indirectly" received a tax advantage because the domestic under proof merchandise is taxed indirectly on the basis of the proof gallon.[3]

In overruling the importer's protest, the Customs Court, one judge dissenting, held that section 2800(a)(1) did not discriminate between the imported and domestic products within the meaning of Article III of GATT, *supra*, but that the statute merely laid a different rate of tax on two distinct classes of merchandise, viz, (1) proof or over proof spirits, (2) under proof spirits, in either of which classes the importer was free to enter its product. In support of that view, the trial court relied on *Bohemian Distributing Co. et al.* v. *United States*, 15 Cust. Ct. 121, C.D. 957, appeal dismissed May 29, 1946, and *Vernon Distributing Co.* v. *United States*, 39 CCPA 205, C.A.D. 463.

In the view we take of this appeal, we shall assume arguendo that it is the universal practice of domestic producers of 90 proof gin to withdraw the product from bond when over proof and to pay the tax on the proof gallon basis prior to diluting same to the 90 proof gin, although in one instance a domestic manufacturer was assessed on the wine gallon basis. We shall further assume that GATT creates an international obligation which is applicable to section 2800(a)(1) of the Internal Revenue Code of 1939 as amended by the Revenue Act of 1951, and to section 615 of that Act. Accordingly, we need only determine whether the assessment under section 2800(a)(1) on the imported merchandise is in excess of that applied "directly or indirectly" to the like domestic product contrary to the cited portions of GATT.

[3] The domestic 90 proof distilled spirits, when taxed on the proof gallon basis prior to reduction (dilution) are alleged to have been indirectly assessed at 90 per cent of $10.50, or $9.45 for each wine gallon after reduction instead of $10.50 as assessed by the collector upon each wine gallon of imported 90 proof distilled spirits.

In order to resolve the issue, a discussion and an analysis of section 2800(a)(1) and its application should be helpful. That section levies the tax on "distilled spirits in bond or produced in or *imported into* the United States." (Emphasis ours.) The subject of the tax is "distilled spirits" whether produced in the United States or imported into this country. The rate of tax under that section at the time of the importation of the instant merchandise was "$10.50 on each proof gallon or wine gallon when below proof." Thus, there exist in the statute two classifications of distilled spirits, proof gallon and below proof or wine gallon. Those classifications were established by the Congress in 1868 for purely domestic purposes and have been retained in substance each time the Congress has considered this subject. 15 Stat. 125 (1868); Rev. Stat. § 3251 (1875); 40 Stat. 1105 (1919), as amended, 26 U.S.C. § 2800(a)(1). Each classification creates a separate and distinct commodity and the tax is levied on each one. The tax attaches to the domestic distilled spirits when they are produced and the tax is payable when they are withdrawn from bond, *according to their proof at that time.* 26 U.S.C. § 2800(a)(1) and (c). *Rogan, Collector* v. *Conterno*, 132 F. 2d 726 (CCA 9, 1943). If not placed in a bonded warehouse, the tax is immediately due and payable. 26 U.S.C. 2800(b)(2). The tax attaches to imported distilled spirits at the time of importation, *United States* v. *Westco Liquor Products Co.*, 38 CCPA 101, C.A.D. 446, and is payable *according to its proof* when entered into the United States in conformity with the doctrine that all imported products are dutied according to their condition when imported. *United States* v. *Citroen*, 223 U.S. 407; *Leonard Levin Co.* v. *United States*, 27 CCPA 101, C.A.D. 69. Applying those principles, the collector in this case taxed appellant's under proof spirits according to the provisions of the statute. If appellant's products had been imported as proof spirits or merchandise in over proof condition, it would doubtless have been taxed accordingly.

The collector applied the provisions of the Internal Revenue Code to the imported spirits by the same standards that he uses in applying the act to domestic spirits. Certainly, that procedure was in accordance with the provisions of GATT. As Article II, section 2, provides:

> 2. Nothing in this Article shall prevent any contracting party from imposing at any time on the importation of any product (a) a charge equivalent to an internal tax imposed consistently with the provisions of paragraph 2 of Article III in respect of the like domestic product or in respect of an article from which the imported product has been manufactured or produced in whole or in part; * * *

Appellant lays great stress on the theory that, since the domestic producer invariably withdraws his spirits from bond at 100 proof or in over proof condition, the spirits are taxed on the proof gallon basis, and thereafter the spirits are reduced to a percentage of alcohol below proof; that by such procedure the under proof spirits are "indi-

rectly" receiving the advantage of the tax applied on the proof gallon basis. It is contended, therefore, that the provision of GATT that

> The products of the territory of any contracting party imported into the territory of any other contracting party shall not be subject, directly or indirectly, to the internal taxes or other internal charges of any kind in excess of those applied, directly or indirectly, to like domestic products, * * * (Art. III, section 2, *supra.*)

has been violated.

In this instance, however, the collector has not applied directly or indirectly internal taxes to the foreign commodity in excess of those applied indirectly to the like domestic product. Assuming that the "like domestic product" is, as has been urged by appellant, the domestic under proof spirits in commercial competition with the foreign commodity, we fail to see how any tax is applied "indirectly" to the domestic spirits. It is, of course, true that the price of domestic under proof spirits will *reflect* the direct tax imposed upon the over proof spirits from which they are made, but so it is with any article of commerce which is derived from a different commodity which has been taxed theretofore. The instant tax is rather assessed "directly" upon *different* merchandise on a basis dependent upon the physical condition when withdrawn from bond or imported into this country. The collector merely applied the tax to the merchandise in the condition in which he found it at the time the tax accrued in accordance with the provisions of the statutes. The domestic producer controls the composition of his products in the same fashion that the importer can control the composition of his product when he imports it. He can import proof or over proof spirits and have the commodity taxed accordingly. The provisions of the act are applied uniformly to the merchandise of the domestic producer and importer alike.

Appellant contends that the foreign producer is placed in a disadvantageous position if he exports proof or over proof spirits to this country because he is required to undergo extra expense to reduce the alcohol content and to bottle his product when it reaches this country. Also, if he is compelled to bottle in the United States he loses the great advantage of bottling his under proof spirits in Europe for export to this country.

The record is silent as to the cost to rectify and to bottle spirits in this country. In addition, there is nothing in the record to establish the advantage of marketing spirits which have been bottled in a foreign country. Even if appellant had evidence supporting his contention we would deem it irrelevant to the present issue.

In view of our determination that the provisions of the Internal Revenue Act have been applied equally and fairly to both domestic and imported spirits alike, section 2 of Article III of GATT, *supra*, has not been contravened. Therefore, section 615 of the Revenue Act of 1951, 65 Stat. 569, *supra*, can not be applied to section 2800(a)(1),

of the Internal Revenue Code of 1939, as amended, so as to invalidate the collector's action.

As stated by the Customs Court, Section 2800 of the Internal Revenue Code has previously been construed in connection with other trade agreements by it as well as by this court. *Bohemian Distributing Co., et al.* v. *United States, supra. Vernon Distributing Co.* v. *United States, supra.*

Trade agreements with Canada (T.D. 48033, T.D. 49752) and with the United Kingdom (T.D. 49753), were involved in the *Bohemian* case. Those trade agreements have the same purpose as the provisions of GATT, i.e., to prevent discrimination against imported merchandise. The United Kingdom agreement reads in part as follows:

ARTICLE III (T.D. 49753)

> Articles the growth, produce or manufacture of the territories of either High Contracting Party shall, after importation into the territories of the other, be exempt from all internal taxes, fees, charges or exactions other or higher than those payable on or in connection with like articles of domestic or any other origin, * * *.

In that case imported under proof whisky was taxed on the wine gallon basis, whereas the evidence showed that domestic under proof whisky withdrawn from bond above proof and taxed on the proof gallon basis would have been taxed on the wine gallon basis if it had been withdrawn from bond below proof. The court held that two different products were involved; imported below proof whisky and domestic above proof whisky, and therefore, when the collector taxed the domestic above proof whisky on the proof gallon basis and the imported below proof whisky on the wine gallon basis, the trade agreements were not violated.

In the *Vernon Distributing Company* case, *supra*, which involved below proof rum imported from Cuba, this court was called upon to construe section 2800(a)(1) in relation to a trade agreement with Cuba, T.D. 50050. That agreement provided:

> 5. The provisions of Article I and Article III of this Agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

This court, in holding that this trade agreement was not contravened because imported under proof spirits were taxed on a different basis than domestic proof or over proof spirits, stated at page 211:

> Whether or not the laws of Cuba render it necessary to produce rum at "more than proof"—that is, as we understand it, having more than 100 parts alcohol—we are not advised, but from the stipulation, *supra*, it appears that the particular rum here involved was produced in Cuba by a process of distillation so that it was 160 degrees proof or over. Had it been imported into this country in that

condition, as it might have been, it would have been assessed with an internal revenue tax upon the proof or degree basis, precisely the same basis as that applied in the case of a domestic product. The statute so provides where alcoholic degrees of 100 or more are made the measuring factor.

However, the rum was not imported in its distilled condition. By means of water it was reduced in strength to an 89 degree alcoholic content and imported in that condition. By the terms of the statute, therefore, it became subject to wine gallon measure just as domestic rum would be if no internal revenue tax were imposed upon it until after its alcoholic strength had been reduced to less than 100 degrees by the addition of water.

Appellant contends that these cases are distinguishable from the case at bar because the language of the trade agreements therein is different from the language in GATT. Even so, we find no such distinguishing features. All the agreements were drawn and negotiated to prevent discrimination against imported products either directly or indirectly. The statute and facts involved in the cases cited were substantially the same as in the case at bar. The courts found that the agreements were not contravened. The mere use of the word "indirectly" in GATT does not make the agreement different in substance from the agreements in the *Bohemian* and *Vernon* cases, *supra*. The collector could not have "indirectly" contravened those agreements either, for it is a cardinal principle of law that that which cannot be done directly cannot be done by indirection; if the word "indirectly" had been used in the agreements in the same context as in GATT, we believe that the decisions reached would have been no different.

The appellant cites *Parrott & Co.* v. *United States*, 156 F. 2d 943, in support of its position. That case involved rum distilled in the Virgin Islands at more than 100 proof, and later by the addition of water reduced to less than 100 proof. Subsequently, the rum in that condition was shipped to the United States.

The court, in holding that the rum should be taxed on a proof gallon basis, stated:

The rums here in issue being distilled in the Virgin Islands were without any requirement that they remain in a federal bonded area until the tax is paid. Congress well knew this when it provided in Section 3350 *that the rum was to be taxed as if produced in the United States*. It must have intended that the tax would be the equivalent of that provided by Section 2800(b)(2) for distilled liquors not deposited in bonded warehouses, that is the amount which would have attached as soon as the distillation was complete—here because above proof at the proof gallon rate. Cf. St. Paul Mercury Indemnity Co. v. United States, supra. (Emphasis ours.)

Since the court based its decision on the proposition that "the rum was to be taxed as if produced in the United States," that case is not controlling here.

In conclusion, we are of the opinion that since the statute has classified distilled spirits in two categories (1) distilled spirits above proof and (2) distilled spirits below proof and established a rate of

tax for each such classification, the consistent and uniform application of the statute to domestic distilled spirits and imported distilled spirits does not contravene the provisions of GATT; and that the record herein reveals nothing which would warrant a different procedure than that adopted by the collector.

For the foregoing reasons the judgment of the Customs Court is *affirmed.*