(C. D. 957)

BOHEMIAN DISTRIBUTING Co. AND SANDEMAN & SONS
*v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 11, 1945)

*Harper & Harper (Abraham Gottfried, Walter I. Carpeneti, Lawrence A. Harper,* and *Charles J. Evans* of counsel) for the plaintiffs.

*Paul P. Rao,* Assistant Attorney General (*Joseph E. Weil, Robert C. O'Grady, William J. Vitale,* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: Two protests have been consolidated for trial in this case. Protest 983180–G involves internal revenue tax paid on

certain Cherry Heering Liqueur. Protest 8474–K involves Scotch whisky. Plaintiff makes no claim as to the regular duty assessed on these commodities under the Tariff Act of 1930, but claims that the collector acted illegally in assessing the internal revenue tax upon the number of wine gallons imported instead of the number of proof gallons. Both commodities as imported were below proof.

The collector's action was taken under the provisions of section 2800 of the Internal Revenue Code, which is as follows:

SEC. 2800.  TAX. (a) RATE.—(1) DISTILLED SPIRITS GENERALLY.

There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in or imported into the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

Protest 983180–G also involves a claim as to the bottles containing the merchandise. However, as the record is lacking in proof both as to the commodity Cherry Heering Liqueur and the bottles, we overrule that protest.

Taking up protest 8474–K, which covers distilled spirits (whisky) imported from Scotland, we find that the claim of the plaintiff as to that commodity is predicated upon certain language found in the trade agreements with Canada (T. D. 48033 and T. D. 49752) and the trade agreement with the United Kingdom (T. D. 49753). In view of the fact that the corresponding articles contained in the Canadian Agreements are almost identical in language and context with those in the United Kingdom Agreement, we will set out only the two articles from the United Kingdom Agreement as follows:

ARTICLE III [T. D. 49753]

Articles the growth, produce or manufacture of the territories of either High Contracting Party shall, after importation into the territories of the other, be exempt from all internal taxes, fees, charges or exactions other or higher than those payable on or in connection with like articles of domestic or any other origin, except as otherwise required by laws in force on the day of the signature of this Agreement and subject, in the case of the United States of America, to the constitutional limitations on the authority of the Federal Government.

ARTICLE XII

* * * The said articles shall also be exempt from all other duties, taxes, fees, charges or exactions of any kind, imposed on or in connection with importation, in excess of those imposed on the day of the signature of this Agreement or required to be imposed thereafter under laws of the United States of America in force on the day of the signature of this Agreement.

Two witnesses were called on behalf of the plaintiff. The first, Mr. James E. Weber, described himself as a rectifier whose duties are to withdraw spirits from bond and to mix and blend and bottle them as a finished product for the trade. He stated that domestic whisky

withdrawn from bonded warehouse varies in proof from 103 to 115, that this is diluted with distilled water and bottled; that his company pays the internal revenue tax on domestic whiskies withdrawn in bulk on the basis of the proof gallon. Further, he testified that it is advantageous to withdraw domestic whiskies from bond over proof for the reason that if under proof they would be taxed on the wine gallon. This witness stated in explanation of the term 100 proof that the term means 50 per centum alcohol.

The Internal Revenue Code defines proof spirits in section 2809 (c) as follows:

Proof spirits shall be held to be that alcoholic liquor which contains one-half its volume of alcohol of a specific gravity of seven thousand nine hundred and thirty-nine ten-thousandths (.7939) at sixty degrees Fahrenheit.

The only other witness produced on behalf of the plaintiff, Mr. John K. Esquin, an importer of distilled spirits, was interrogated as to the method of producing Scotch whisky but his testimony was objected to on the ground that his experience was too remote and the testimony was not admitted.

Subsequently it was agreed between counsel that Scotch whisky is produced over proof and thereafter rectified and reduced below proof; it is then bottled and imported and upon importation is taxed upon the wine gallon. Also that United States whisky is produced over proof, taxed when produced at the proof as produced, and is thereafter withdrawn, rectified, and bottled below proof.

Plaintiff in his brief contends that "The facts show that imported Scotch whisky which is produced in the same manner as United States whisky pays tax upon the wine gallon and that United States whisky pays tax only upon the proof gallon. This causes the importer of Scotch whisky which is under proof to pay a higher internal revenue tax than domestic whiskies of the same type and proof." It is difficult to understand this contention, as the record is devoid of facts which establish that imported whisky below proof is similar to domestic whisky above proof.

Plaintiff further contends in substance that the provision in section 2800 (c), supra, that the tax therein provided "shall attach to distilled spirits * * * as soon as this substance is in existence * * *," means that the internal revenue tax shall apply to imported whisky when it is produced in a foreign country. A mere statement of this contention serves to defeat it. Surely this country would not attempt to tax merchandise at the time it is produced in some foreign country. Inasmuch as imported whisky which is below proof cannot be like or similar to domestic whisky above proof, and since section 2800, supra, distinguishes between them, there cannot be said to be any similarity between the two commodities for internal revenue purposes.

An examination of the trade agreements with Canada and with the

United Kingdom fails to disclose any ground which supports plaintiff's claims.

Upon this record we find nothing to overcome the presumption of correctness attaching to the collector's action. The protests are therefore overruled.

Judgment will be rendered for the defendant.