(C. D. 1244)

Vernon Distributing Co. *v.* United States

United States Customs Court, Third Division

(Decided May 15, 1950)

Lawrence, Tuttle & Harper (George R. Tuttle, Lawrence A. Harper, and Walter I. Carpeneti of counsel) for the plaintiff.
David N. Edelstein, Assistant Attorney General (William J. Vitale and Richard E. FitzGibbon, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case involves a quantity of rum, invoiced as "white" and "gold," imported from Cuba, in bottles containing less than 1 gallon each. It was entered for consumption at the port of Los Angeles on May 16, 1940. In addition to the customs duty assessed under the provisions of the Tariff Act of 1930, as to which there is no controversy, a tax of $2.25 per wine gallon under authority of section 2800 of the Internal Revenue Code (26 U. S. C. 1940 ed.) was levied. It is against this assessment that plaintiff's claim is directed. It is claimed (1) that such tax should not be assessed at a higher rate than was assessable upon the date of the effectiveness of the initial Cuban trade agreement (T. D. 47232), i. e., $2 per gallon; and (2) that under the terms of a later trade agreement with Cuba (T. D. 50050), this tax should have been assessed upon the number of proof gallons rather than upon the number of wine gallons imported.

The case was originally heard and submitted at the port of San Francisco at which hearing no testimony was adduced, both sides submitting upon the following stipulation:

* * * the rum covered by this protest was produced in Cuba by a process of distillation at 160 degrees proof, or over, and from fermented black strap molasses. Thereafter it was stored in oak barrels for aging and after aging, caramel was added as a color agent to such of the rum as is described in the consular invoice as "Gold." It was then reduced in proof to 89 degrees by the addition of water, placed in bottles containing less than one gallon each, and shipped to the United States; that like rum was produced in the United States

from fermented black strap molasses by a process of distillation and at a proof of approximately 190 degrees; it was stored in oak barrels and in bonded warehouses for aging and after aging was withdrawn from bonded warehouses at 100 degrees proof or over and the Internal Revenue Tax paid thereon upon the basis of the number of proof gallons so withdrawn. It was then reduced in proof to approximately 86 degrees by the addition of water and placed in bottles containing less than one gallon each. Also, after withdrawal from warehouse, and prior to reduction in proof, caramel was added as a coloring agent to such of said rum as was like the "Gold" rum referred to above, and rectification tax was paid thereon.

Both sides were granted time for briefs and subsequently request for oral argument on the briefs was granted and the case finally submitted for decision on the briefs and oral argument.

For convenience of reference we quote the pertinent provisions of the statute and trade agreements involved, as follows:

§ 2800.   Tax—(a)   Rate—(1)   Distilled spirits generally.

There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in or imported into the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. [This section was derived from the acts of Feb. 24, 1919, ch. 18, § 600 (a) (4), as amended by act Feb. 26, 1926, ch. 27, § 900, 44 Stat. 104; Jan. 11, 1934, ch. 1, § 2, 48 Stat. 313, as amended by act May 28, 1938, ch. 289, § 710 (a), 52 Stat. 572.]

CUBAN TRADE AGREEMENT, 1934, T. D. 47232:

ARTICLE VIII

All articles the growth, produce, or manufacture of the United States of America or the Republic of Cuba, shall, after importation into the territory of the other country, be exempt from national or federal internal taxes, fees, charges, or exactions, other or higher than those payable on like articles of national or any other foreign origin.

* * * and all articles enumerated and described in Schedule II annexed to this Agreement, with respect to which a rate of duty is specified in Column 2, of the said Schedule, shall be exempt from all taxes, fees, charges, or exactions, in excess of those imposed or required to be imposed by laws of the United States of America in effect on the day on which this Agreement comes into force.

CUBAN TRADE AGREEMENT, 1939, T. D. 50050:

ARTICLE III

Article VIII of the Agreement of August 24, 1934, is amended to read as follows:

*        *        *        *        *        *        *

Articles the growth, produce or manufacture of the Republic of Cuba enumerated and described in Schedule II annexed to this Agreement shall, on their importation into the United States of America, be exempt from all duties other than ordinary customs duties and all taxes, fees, charges or exactions, imposed on or in connection with importation, in excess of those imposed on September 3, 1934, or required to be imposed thereafter by laws of the United States of America in force on September 3, 1934.

*        *        *        *        *        *        *

The provisions of Article I and Article III of this Agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

In considering the first question presented, i. e., that the tax should not be assessed at a higher rate than was assessable upon the effective date of the first Cuban trade agreement, we find that claim has been adjudicated by this court and the Court of Customs and Patent Appeals in *United States* v. *Rathjen Brothers,* 31 C. C. P. A. (Customs) 70, C. A. D. 250, and also in *United States* v. *Schenley Import Corp. idem* 73, C. A. D. 251. In the *Rathjen* case an importation of rum from Cuba was involved. Plaintiff claimed that the proper rate of internal revenue tax was $2 per gallon rather than $2.25, as assessed. This claim was based upon the terms of Article VIII of the Cuban Trade Agreement of 1934, *supra,* providing that distilled spirits, among other things, should be exempt from all taxes, fees, charges, or exactions in excess of those in effect on the day of the signing of that agreement. The court decided that the Internal Revenue Act of 1938, being later in date, superseded the trade agreement. In arriving at that decision the court used the following language:

It appears to us from the wording of the statute and article VIII of the Cuban Trade Agreement of 1934 that with respect to the issue here the two are absolutely irreconcilable and that therefore the subsequent legislation supersedes by clear implication the quoted portion of that agreement. *Rainey* v. *United States,* 232 U. S. 310, 316; *Whitney* v. *Robertson, supra,* at page 194; *Hijo* v. *United States,* 194 U. S. 315, 324.

We are fortified in our conclusion that the Congress intended by the provisions of the said revenue act to include the involved merchandise as taxable for internal revenue purposes as hereinbefore set out by the manner in which it worded section 704 of the same act in providing for a tax on lumber, as follows:

(b) Each sentence of the amendment made by subsection (a) shall become effective (1) on the sixtieth day after the date of the enactment of this Act *unless in conflict with any international obligation of the United States* or (2) if so in conflict, then on the termination of such obligation otherwise than in connection with the undertaking by the United States of a new obligation which continues such conflict. [Italics ours.]

From the above-quoted language it is plain to us that the Congress in enacting the said revenue act had clearly in mind the international obligations of the United States such as the one here involved, and if it had intended that merchandise from Cuba such as in the instant case was to be excepted from the scope of that act it would have so stated as it did with respect to the tax on lumber. [Italics quoted.]

Certiorari was denied in this case by the Supreme Court, 320 U. S. 797.

See also in this connection the case of *United States* v. *Schenley Import Corp.,* 31 C. C. P. A. (Customs) 74, C. A. D. 251; certiorari denied, 320 U. S. 782.

In the later case of *Sawelson Wholesale Co.* v. *United States*, 15 Cust. Ct. 202, C. D. 973, the court had before it rum from Cuba which was imported in 1941, subsequent to the enactment of the Revenue Act of 1940 (54 Stat. 516 at 524) which act increased the rate of tax from $2.25 to $3 per proof gallon. The importer protested this assessment claiming that under the trade agreement with Haiti, the terms of which were generalized under the provisions of the most-favored-nation clause of the Trade Agreement Act (section 350, Tariff Act of 1930; 19 U. S. C. 1940 ed. § 1351), the proper rate was $2 per proof gallon. In overruling this claim, the court cited the *Rathjen* case, *supra*, and stated:

Moreover, we are confronted with a different situation in the instant case than that presented in the *Rathjen* case, *supra*, due to a different state of the law. At the time of the importation of the rum here involved, July 28, 1941, there was in effect a supplementary trade agreement between the United States and Cuba (54 Stat. 1997) which became effective December 23, 1939. Article III of this supplemental agreement amended article VIII of the earlier agreement as follows:

> The provisions of Article I and Article III of this Agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

Article I relates to the imposition of customs duties by the Republic of Cuba upon American products. Article III in the third paragraph thereof provides that articles enumerated in the schedule annexed to the agreement shall be exempt from all taxes, fees, charges, or exactions "in excess of those imposed on September 3, 1934, or required to be imposed thereafter by laws of the United States of America in force on September 3, 1934."

By the amendment above set forth it is plain that the Cuban Government expressly released this Government from the obligation it had previously assumed of allowing exemption to Cuban products from any higher internal revenue taxes than those in effect on September 3, 1934, or required to be imposed by laws of the United States in force on that date. Therefore, the wording of the statute here in issue (section 213 of the Revenue Act of 1940, *supra*) is not in conflict with the supplemental Cuban Trade Agreement in that in the latter the Cuban authorities expressly agree that the United States may impose "a charge equivalent to an internal tax imposed in respect of a like domestic article." Surely we cannot assume that the Cuban Government intended such release as an empty gesture. Presumably the supplemental Cuban Trade Agreement was entered into with full knowledge of the effect of the generalization clause of section 350 (a) of the Tariff Act of 1930, under which Cuban products were entitled to the same rate as that imposed by internal revenue laws on products of countries whose trade agreements with the United States contained no language comparable to that contained in this supplemental trade agreement. The presumption also exists that Congress had knowledge of this amendment to the earlier Cuban Trade Agreement and the result of the generalization clause of the Reciprocal Trade Agreement Act, *supra*, when it enacted the Revenue Act of 1940 here involved, which imposed a tax of $3 per proof gallon on distilled spirits generally, including those produced in the United States. Inasmuch as the Cuban Government had expressly agreed that the United States should be free to impose at

any time on the importation of distilled spirits (which term includes rum) a charge equivalent to an internal tax imposed in respect of a like domestic article, it is clear that the imposition of this $3 tax applies to the rum in suit.

No appeal was taken in the above case. It is plain, therefore, that the first question is *stare decisis*.

Taking up the second question raised by the plaintiff, i. e., whether the internal revenue tax should be based upon the wine gallon or the proof gallon of the rum imported, we find that this question also has been passed upon by this court. In *Bohemian Distributing Co. et al.* v. *United States*, 15 Cust. Ct. 121, C. D. 957, the court decided this issue adversely to plaintiffs' claim. The merchandise there before the court consisted of Scotch whisky, below proof, which was assessed upon the basis of the wine gallonage. Plaintiff claimed that in view of the provisions of the trade agreement with the United Kingdom (T. D. 49753) such tax should have been assessed upon the number of proof gallons. There, as here, there was no dispute but that the imported commodity was below proof. Plaintiffs' claim in that case also was based upon the fact that both the imported commodity and the like domestic article were produced over proof and reduced to below proof. Plaintiff contends that this case is distinguishable in that the provision in Article III of the supplemental trade agreement with Cuba (T. D. 50050) was not present in the agreement with the United Kingdom involved in the cited case. Said provision is as follows:

The provisions of Article I and Article III of this agreement and of the third paragraph of this Article shall not prevent the Government of the United States of America from imposing at any time on the importation of any article a charge equivalent to an internal tax imposed in respect of a like domestic article or in respect of a commodity from which the imported article has been manufactured or produced in whole or in part.

This provision, which is referred to by plaintiff as the "domestic equivalence clause," far from restricting the Government of the United States from imposing taxes upon imported articles, reserves the right to this Government to increase or to impose such taxes. In the absence of a like clause in the trade agreement with the United Kingdom which was before the court in the *Bohemian*· case, *supra*, this court held that the assessment of the tax on the wine gallon basis was proper. If it was proper to base assessment on the wine gallon in the absence of a permissive clause such as that above quoted, certainly it is proper in the face of such a clause.

However, an analysis of the taxing statute here involved will disclose that no discrimination exists in the rates fixed as between imported distilled spirits and domestic spirits. A single rate of tax is provided for but is made applicable to two distinct products, i. e., (1) distilled spirits over proof, and (2) distilled spirits below proof.

The tax becomes effective when such spirits are produced in the United States or imported into the United States. Under the law no discrimination exists. When distilled spirits are produced in this country over proof or are imported over proof, the tax is to be based upon the proof gallon. When produced in the United States under proof or imported under proof the tax is based on the wine gallon. In view of the wording of the taxing statute which distinguishes between the two kinds of distilled spirits, viz, those that are over proof and those that are under proof, the contention of the plaintiff that they are similar for purposes of taxation cannot be successfully maintained.

In this connection, the language of the court in the *Bohemian* case, *supra*, in discussing the similarity between domestic over proof whisky and imported under proof whisky, stated at p. 123:

Subsequently it was agreed between counsel that Scotch whisky is produced over proof and thereafter rectified and reduced below proof; it is then bottled and imported and upon importation is taxed upon the wine gallon. Also that United States whisky is produced over proof, taxed when produced at the proof as produced, and is thereafter withdrawn, rectified, and bottled below proof.

Plaintiff in his brief contends that "The facts show that imported Scotch whisky which is produced in the same manner as United States whisky pays tax upon the wine gallon and that United States whisky pays tax only upon the proof gallon. This causes the importer of Scotch whisky which is under proof to pay a higher internal revenue tax than dometic whiskies of the same type and proof." It is difficult to understand this contention, as the record is devoid of facts which establish that imported whisky below proof is similar to domestic whisky above proof.

Plaintiff further contends in substance that the provision in section 2800 (c), *supra*, that the tax therein provided "shall attach to distilled spirits * * * as soon as this substance is in existence * * *," means that the internal revenue tax shall apply to imported whisky when it is produced in a foreign country. A mere statement of this contention serves to defeat it. Surely this country would not attempt to tax merchandise at the time it is produced in some foreign country. Inasmuch as imported whisky which is below proof cannot be like or similar to domestic whisky above proof, and since section 2800, *supra*, distinguishes between them, there cannot be said to be any similarity between the two commodities for internal revenue purposes.

The above language is equally pertinent to the case at bar involving rum. Both are distilled spirits and the internal revenue law refers to distilled spirits.

The cases cited in plaintiff's brief which arose under the Foraker Act of April 12, 1900 (31 Stat. 77), fail to lend support to plaintiff's contention. In the case of *Jordan* v. *Roche*, 228 U. S. 436, 57 L. ed. 908, the court had before it the question whether bay rum imported from Porto Rico was subject to a tax equal to the internal revenue tax imposed on "distilled spirit, spirits, alcohol, and alcoholic spirit" in the United States under the equalization clause of the Foraker Act. The court held that the purpose of that act was the equal taxation of Porto Rican articles and domestic articles, and that the provisions of

the internal revenue laws did not describe articles by name, but by character. The court there pointed out that bay rum was taxed in the United States according to its alcoholic content as a distilled spirit and that the same tax was proper on imported bay rum. Applying the reasoning of that case to the case at bar, imported under proof rum, which is within the descriptive term "distilled spirits," should pay internal revenue tax upon the same basis as under proof distilled spirits produced in the United States.

The rulings and regulations of the Bureau of Internal Revenue set forth in plaintiff's brief are not before us for interpretation and, therefore, will not be considered in a determination of the issue presented.

On the question as to how the two kinds of rum here involved, viz, "white" and "gold," differ and whether either or both have been rectified, we express no opinion, for the reason that the record is lacking in proof as to those matters.

Upon the record we find that plaintiff has failed to produce any evidence that would cause us to depart from the reasoning of the cases above cited. The claims of the plaintiff are therefore overruled. Judgment will be rendered for the defendant.